364 So.2d 1064 (1978)
Mrs. Joyce Perez GELPI
v.
Richard J. BURKE, Thomas P. Eustis and Gregory E. Eustis.
No. 9454.
Court of Appeal of Louisiana, Fourth Circuit.
November 8, 1978.
Rehearing Denied December 15, 1978.
*1065 W. Eric Lundin, III, Duke & Porterie, New Orleans, for plaintiff.
Clarence F. Favret, Jr., Favret, Favret & Demarest, New Orleans, for defendant Richard J. Burke.
Edmond H. Fitzmaurice, Jr., Provensal & Fitzmaurice, New Orleans, for defendants Thomas P. Eustis and Geoffrey E. Eustis.
Before REDMANN, LEMMON and BEER, JJ.
REDMANN, Judge.
Plaintiff Louisiana domiciliary, the assignee of a Texas judgment for $143,795.62 owed to a Texas bank on a Texas mortgage loan, appeals from a summary judgment in Louisiana refusing further execution of the judgment.
Not at issue is the unquestionable entitlement of the Texas judgment to full faith and credit, U.S.Const. art. 4 § 1, the same in Louisiana as in Texas, 28 U.S.C. § 1738. But that a judgment is entitled to *1066 full faith and credit does not prevent it from being extinguished. Payment of a foreign judgment (either in the foreign state or elsewhere) discharges the judgment in the foreign state, and upon any later attempt to execute the judgment discussion of constitutional issues of full faith and credit would be pointless. Other means of extinguishment or satisfaction effective in the state of rendition to discharge a judgment are equally effective in all states, without taking one whit from the judgment's entitlement to full faith and credit.
The core question in this case is whether this perfectly good Texas judgment, absolutely entitled to recognition by Louisiana, has been extinguished in Texas. Does the "purchase" of the judgment by the mother of two of the three individual judgment debtors constitute its payment (by her for them), or, if not, is the judgment discharged by her execution of the judgment by mortgage-foreclosure sale to her sons for $10,000 of the property admittedly bought for $176,000 and allegedly worth $200,000?
We set aside the summary judgment because there is dispute over the material facts concerning both the value of the property and the mother's relationship to the sons as to her acting with or for them in "buying" the Texas judgment from the bank and in foreclosing the mortgage. (There are possibly other unanswered questions of fact, such as what was the agreement, as among themselves, express or implied, as to the "shares" of the two sons and Burke of the secondary liability on the notes. The two sons apparently supplied 100% of the corporate funds, although Burke was a 50% shareholder.)
There are allegations of the mother's involvement with the sons and defendant Burke from before the incorporation by the sons and Burke of defendant Ben Development Co., Inc. and until recent efforts by her, acting in concert with her sons, to destroy the corporation because of some disagreement between Burke and the sons. These allegations, including that the mother purchased and foreclosed on other corporate indebtednesses, lend support to the allegation that the mother acted for or with the sons in "buying" the bank's judgment in order to harm Burke. If the sons themselves bought that judgment (or paid it off), they might have been entitled to recover Burke's share of their secondary liability but equity would not tolerate that they force Burke to pay his share of the land while their Texas maneuvers deprive him of all interest in it for virtually no credit against the price.
Burke argued the applicability in principle of Louisiana's deficiency judgment statute, La.R.S. 13:4106-4107. That statute declares a public policy so strong that its provisions "can not . . . be waived by a debtor": a judicial sale (in Louisiana) without appraisement (because the creditor so chose, having utilized the debtor's waiver) constitutes the debt "fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor." Because that Louisiana statute is also entitled to full faith and credit, a Texas court would presumably apply it had such a sale occurred in Louisiana[1] and hold a Louisiana obligation discharged. But a Texas court, or any other court, would presumably not apply the Louisiana statute to the Texas sale, in the absence of a determination that Louisiana alone had an interest in determining the implications of the Texas sale vis-a-vis the rights and liabilities in personam of the Louisiana-domiciled assignee of the Texas judgment who provoked and permitted the sale and the Louisiana-domiciled judgment debtors. Unless Texas would, Louisiana constitutionally may not, on such a theory of false conflict, apply the Louisiana statute to discharge the judgment debtors' personal liability.
There can be no question of Texas's interest in the satisfaction of its court's judgment *1067 in favor of a Texas bank, or the stability of Texas land titles arising out of Texas judicial sales, or probably any other question affecting the Texas bank or the Texas land. Had the Louisiana mother not bought the judgment from the Texas bank  or had the Texas bank made this foreclosure sale[2] prior to the "assignment" of the judgment to the mother  it would be nonsense to suggest that Louisiana law should govern on a false conflict theory. But in the action before us, nothing touches either the Texas bank or the Texas land. The Texas bank has its money; the Texas land is not involved. This is a purely personal action involving only Louisiana domiciliaries, to decide personal rights and liabilities as among themselves.
Even so, the simple sale in execution in another state for a very low price would not discharge a judgment under the general principles of Louisiana's deficiency judgment law, in the absence of a showing that some minimum bid procedure was available at the foreign execution but was spurned by the Louisiana judgment creditor. No minimum bid procedure appears to be available in Texas. However, Louisiana principles would include, as the greater includes the lesser, that foreclosure sale for a shockingly inadequate price, when coupled with other circumstances indicative of a taking advantage of the debtor, does not constitute a proper sale upon which to calculate the amount of a deficiency judgment (see obiter dicta in Sparkman v. McWhirter, Tex.Civ.App., 1954, 262 S.W.2d 832), and that the appropriation by the mortgagee of the property without a valid sale entitles the mortgagor to credit for the reasonable market value of the property (see obiter dicta in Maupin v. Chaney, 1942, 139 Tex. 426, 163 S.W.2d 380; Kolbo v. Blair, Tex. Civ.App., 1964, 379 S.W.2d 125).
There thus may be sufficient authority in Louisiana law (applied on the basis that there is only a false, if any, conflict of laws), and there may even be sufficient authority in Texas law, to hold the Texas judgment discharged, at least to the extent of the market value of the Texas land at the time of foreclosure (although the factual bases are disputed and thus no summary judgment could apply those legal authorities). But there is no possibility of simply applying Louisiana's deficiency judgment statute, and the summary judgment apparently based on application of that statute must be set aside and the matter remanded for trial.
Set aside; remanded; costs to await final disposition.
NOTES
[1] That Texas might consider the Louisiana statute procedural and therefore apply Texas procedural statutes to the Louisiana sale is as doubtful as that Louisiana might, in the matter before us, deem the Louisiana statute procedural and therefore apply it to give the Texas sale the effect of discharging the judgment.
[2] Because the bank was owed $154,000 (after deducting a $25,000 deposit), with no security except the mortgage (and out-of-state guarantors), the bank would not have let the property be sold for only $10,000. Thus the text's supposition would require that the bank should somehow have forgotten to attend the judicial sale to protect its own interest.