**FIRST COMMERCE REALTY INVESTORS, Appellant,**

v.

**K–F LAND COMPANY, et al., Appellees.**

No. A2588.

Court of Civil Appeals of Texas, Houston (14th Dist.).

June 3, 1981.

Rehearing Denied July 1, 1981.

William F. Matthews, Jama L. Casey, Sewell & Riggs, Houston, for appellant.

Michael S. Wilk, David Z. Chesnoff, Hirsch, Westheimer, Block & Wilk, Frank Puckett, Jr., Tom Alexander, Butler, Bin-

ion, Rice, Cook & Knapp, Houston, for appellees.

Before BROWN, C. J., and PRESSLER and COULSON, JJ.

## J. CURTISS BROWN, Chief Justice.

This appeal presents the conflicts of law question of whether the Louisiana Deficiency Judgment Act[1] applies so as to prevent the deficiency judgment sought here. Not surprisingly, the question is easier stated than answered.

First Commerce Realty Investors (FCRI or appellant) appeals from a summary judgment rendered in favor of K–F Land Company (K–F Land or maker), Mark Lee (Lee), C.R. Royal (Royal), and R.A. Lile (Lile) (or appellees).

In March 1974, FCRI made a $1,561,-000.00 loan to K–F Land Company. The promissory note evidencing the loan was guaranteed by appellees Lile, Lee and Royal and was further secured by deed of trust on certain real property located near the Astrodome in Houston, Texas. This is a suit by FCRI attempting to obtain a judgment for the difference between the amount of the debt owed and the amount credited to the obligation following FCRI's foreclosure by trustee sale of the land securing the note. Appellees moved for summary judgment claiming that as a matter of law the application of the Louisiana Deficiency Judgment Act barred FCRI from obtaining a deficiency judgment against appellees. Defendants' motions were granted. The trial court subsequently severed appellant's action against a remaining defendant and FCRI duly perfected its appeal from the summary judgment.

The facts are undisputed. K–F Land needed a loan. FCRI, a Louisiana Real Estate Investment Trust, was willing to make the loan in question. It required that the officers of the borrower, and the individuals who were to guarantee the note, go to New Orleans, Louisiana to execute the loan documents. By design, the entire transaction took place in New Orleans. The note provides that it "shall be governed by, interpreted and construed in accordance with the laws of the State of Louisiana." Provision was made for payment in New Orleans, Louisiana "or such other place in the State of Louisiana as the holder hereof may designate...". A deed of trust meeting the requirements of Texas law was executed to secure the indebtedness. The real estate securing the note was located in Houston, Texas. The deed of trust provides: "The loan, the payment of the note evidencing same being secured hereby, is a Louisiana transaction. This Deed of Trust and the note and related loan documents have been executed and delivered in the State of Louisiana and are to be governed and construed under and in accordance with the laws of the State of Louisiana." A guaranty, also securing the note, was executed by appellees, Lee, Royal and Lile at the time of the transaction. The guaranty contains the provision that "[t]he transaction for which this guarantee was required is a Louisiana loan transaction. This guarantee shall be construed in accordance with the laws of the State of Louisiana, and such laws shall govern the interpretation, construction and enforcement hereof."

K–F Land, the maker, defaulted and FCRI foreclosed on the land in Texas. The foreclosure sale was held on November 4, 1975, pursuant to the powers conferred by the Deed of Trust and the specific foreclosure procedure set forth therein. A $572,-761.85 deficiency remained, the recovery for which this suit was duly brought.

Texas law constitutes the law of the forum. The State is also the residence and principal place of business of the maker and guarantors of the note, and is the situs state of the land securing the obligation. The transaction is a Louisiana contract, wholly performed and performable in that state except insofar as it may have been necessary to foreclose on the Texas real estate.

---

1. La.Code Civ.Pro.Ann. arts. 2771–2772 (West 1961); and La.Rev.Stat.Ann. §§ 13:4106–13:4107 (West 1968).

Unlike most appeals from summary judgments, the question on this appeal is not whether a fact issue exists but whether the trial court applied the proper law to essentially undisputed facts.

Appellant places emphasis on the following points. (1) The Deed of Trust provisions are peculiar to Texas law and track the language of Article 3810 of the Texas Civil Statutes containing the Texas statutory procedures for sale under a deed of trust. (2) The method for foreclosure of the mortgage on the land and the interest in the land resulting from the foreclosure are determined by the local law of the situs state. Restatement (Second) of Conflict of Laws, § 229 (1971); Stumberg, Principles of Conflict of Laws, §§ 348–49 (3d ed. 1963). Appellant reasons that since the foreclosure is a matter to be determined under Texas Law that this action for deficiency is also properly a matter to be determined by Texas law. (3) Citing Gelpi v. Burke, 364 So.2d 1064 (La.Ct. of App.—4th Cir.1978), appellants assert that Louisiana does not apply its Deficiency Judgment Act to a Texas real estate foreclosure and that the court below should not have done so. (4) The Louisiana courts require strict, not substantial, compliance with the anti-deficiency judgment statute and it would be impossible for a mortgagee under circumstances present here to comply with Louisiana's procedures in Texas. (The Louisiana act provides that if a mortgagee allows a debtor to waive his statutory right to appraisement of his property, and the proceeds of the judicial sale are insufficient to satisfy the debt, the debt is deemed to be discharged and the mortgagee does not have a right to proceed against the debtor for a deficiency. To obtain a judgment in Louisiana against the debtor for any deficiency following judicial sale of the debtor's property, a mortgagee must institute court proceedings and serve notice on the debtor, advertise the sale of the property by publication twice, and give the debtor notice for the appointment of an appraiser. The debtor, the mortgagee and the sheriff may all appoint separate appraisers. After advertisement, appointment of appraisers, and filing of an oath by

the appraisers, the sheriff conducts a public sale. If the highest bid is less than two-thirds of the appraised value, the property may not be sold at the first sale. The sheriff must readvertise the sale of the property, and at the second sale the property may be sold to the highest bidder for cash except that the property may not then be sold if the price offered by the highest bidder is not sufficient to discharge the costs of sale and liens superior to those of the seizing creditor.) (5) Citing 136 A.L.R. 1057 (1942) and 44 A.L.R.2d 922 (1955), appellant contends that most states do not give extraterritorial application to their anti-deficiency judgment statutes. (6) Policy considerations support a reversal of the summary judgment because there is no persuasive reason why a Texas court, in a suit against Texas debtors on a deficiency arising out of the foreclosure of real property located in Texas, should apply the law of Louisiana to bar a mortgagee from a remedy otherwise available in Texas.

■ Certain general principles may be stated. Real property questions are normally determined by the sovereign within whose territory the land is situated. Restatement (Second) of Conflict of Laws §§ 229, 254 (1971). Questions concerning title to real estate—the validity of conveyances, warranties and foreclosures—are determined by the law of the situs. Colden v. Alexander, 141 Tex. 134, 171 S.W.2d 328 (1943); 12 Tex.Jur. III Conflict of Laws § 7 (1981).

■ With respect to contractual obligations, the general rule is that the law of the state where the contract is made controls with respect to validity, interpretation and obligations under the contract. 12 Tex.Jur. III Conflict of Laws § 9 (1981); See also Restatement (Second) of Conflict of Laws, §§ 186–188 (1971). If the place of performance is different from that of the making of the contract, the place of performance may control. 12 Tex.Jur. III Conflict of Laws § 11 (1981). Overriding these general principles is the rule that an express agreement of the parties that the contract is to be

governed by the laws of a particular state will be given effect if the contract bears a reasonable relation to the chosen state and no countervailing public policy of the forum demands otherwise. *Austin Building Co. v. National Fire Union Insurance Co.,* 432 S.W.2d 697 (Tex.1968); *Teas v. Kimball,* 257 F.2d 817, 823 (5th Cir.1958); Restatement (Second) of Conflict of Laws, §§ 186–188 (1971). The rule has been codified in Texas: "[W]hen a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties." Tex.Bus. & Comm.Code Ann. § 1.105 (Vernon Supp.1980–81).

Reduced to the essence, appellant takes the position that the issue of the application of the Louisiana Deficiency Judgment Act is one arising out of a Texas real estate foreclosure, which should be determined by Texas law. On the other hand, appellees claim that the matter at issue relates to the enforcement of the underlying debt (the note and the guaranty) and hence is governed by the law of the state selected by the parties. While acknowledging the closeness of the question, we adopt the latter view. *See* Restatement (Second) of Conflict of Laws, §§ 228 (comment c), 229 (comment e), 254 (comment e) (1971); *Cf.* 39 Tex.Jur.2d *Mortgages* § 204 (1976).

It is difficult to conceive of other steps that could have been taken by the parties to imprint this transaction with Louisiana law. FCRI's principal place of business was in Louisiana. The contract (all loans and documents, including the note, guaranty and deed of trust) was negotiated and executed in Louisiana. The contract was performable in Louisiana. Above all, the *note* provided that it would be "interpreted and construed" in accordance with the laws of Louisiana. The *deed of trust* provided that "the loan, the payment of the note evidencing same being secured hereby, is a Louisiana transaction," and that the note and related loan documents are "to be governed and construed in accordance with the laws of the state of Louisiana." The *guaranty*

agreement provides that "this guaranty shall be construed in accordance with the laws of the State of Louisiana and such laws shall govern the interpretation, construction *and enforcement hereof.*" The reasonable relationship test is satisfied where a party's principal place of business and the place of negotiation, execution and performance of the contract coincide in the state whose law is contractually chosen by the parties. No overriding public policy of Texas bears on the enforcement of the Louisiana anti-deficiency judgment statute.

Under the circumstances here, the parties clearly bargained in the most specific terms for the application of Louisiana law. We see no reason to frustrate such intention so clearly expressed.

Affirmed.