Opinion issued November 30, 2006 

 

 







In The

Court of Appeals

For The

First District of Texas






NO. 01-04-01223-CV






NEXEN INC., NEXEN PETROLEUM OPERATIONS YEMEN LIMITED,
and CANADIAN NEXEN PETROLEUM YEMEN, Appellants


V.


GULF INTERSTATE ENGINEERING CO., Appellee






On Appeal from the 127th District Court

Harris County, Texas

Trial Court Cause No. 2004-18471






O P I N I O N


 Appellants, Nexen Inc., Nexen Petroleum Operations Yemen Limited, and
Canadian Nexen Petroleum Yemen (collectively, "the Nexen parties"), appeal from
a take-nothing summary judgment rendered on their claims against appellee, Gulf
Interstate Engineering Co. ("GIE"), for engineering work that GIE had done in
Yemen on a pipeline for the Nexen parties' corporate predecessor. We determine
whether (1) the statute of repose of Texas or Alberta, Canada applied and (2) GIE
conclusively proved its affirmative defense that the applicable statute of repose barred
the Nexen parties' claims again it. We affirm the judgment.

Background


 In 1991, as alleged by the Nexen parties, CanadianOxy Offshore International
Ltd. ("COIL") entered into a contract ("the contract") with GIE, a company
headquartered in Texas, for GIE to provide engineering services for COIL's proposed
oil processing and development facility in the Masila Block area of Yemen ("the
Masila Project"). Under the contract, GIE provided engineering services for what
was designated "Phase 1" of the Masila Project, which included preparation of a
design-basis manual, a project-execution plan, and a detailed estimate of total
installation costs for the facilities for the Masila Project. The Masila Project had nine
principal components: a gathering system, a pump station, a central production
facility, a pipeline, an export terminal, data and communications systems, offshore
facilities, infrastructure, and power generation and distribution.

 On January 1, 1992, COIL and GIE entered into an amendment to the 1991
contract ("the amended contract"). The amended contract provided for GIE's
engineering services to continue into "Phase 2." In Phase 2, GIE was to design and
to engineer the detailed design, procurement, engineering, and "other project-related
services" required for the Masila Project facilities. At no time did GIE perform
construction services for the Masila Project.

 The Nexen parties alleged in their petition and have asserted in their brief,
without dispute by GIE, that appellant Nexen Inc. is the corporate successor to the
company that was the corporate assignee of COIL; that appellant Nexen Inc. was a
partner in appellant Canadian Nexen Petroleum Yemen, which in turn had an interest
in the ownership and operations of the Masila Project; and that appellant Nexen
Petroleum Operations Yemen Limited was a partner in appellant Canadian Nexen
Petroleum Yemen and was also a successor to COIL.

 In July or August 1993, the pipeline at the Masila Project was completed, with
the exception of punch-list and "ROW clean-up" items, and became operational,
although engineering and construction on the overall Masila Project was still on-going. In July 1994, GIE certified that it had completed all of its engineering work
for the Masila Project. 

 The Nexen parties alleged that, in April 2002, rainfall caused flooding at the
Masila Project site. The flooding caused the pipeline to move, which further caused
the pipeline to strain, to buckle, and to lose its concrete coating, resulting in damage
to the pipeline. In April 2004, the Nexen parties sued GIE for failing to design and
to engineer the pipeline and its route properly, alleging claims for breach of contract,
breach of warranty, negligence, and strict liability for design defect. GIE answered,
alleging, among other things, the affirmative defense of the 10-year statute of repose
under Texas or Alberta law. 

 GIE moved for traditional summary judgment against all of the Nexen parties'
claims. GIE asserted that the statute of repose under both Texas and Alberta law
precluded the Nexen parties' claims. Concerning the choice of law, GIE argued:

 Although there is some indication in the contract[s] between the parties
that the laws of Alberta, Canada should apply, the choice of law is
immaterial because the overall result is the same whether Texas law or
Alberta law applies: [the Nexen parties'] claims must be dismissed with
prejudice as a matter of law.


GIE then analyzed the statutes of repose under both jurisdictions' laws. (1) The crux of
GIE's argument was that (1) under both statutes, the date of substantial completion
of GIE's work was the accrual date for purposes of repose and (2) that date was July
1993, when the pipeline became fully operational. The Nexen parties responded that
(1) the repose law of Alberta and Texas differed materially; (2) Alberta law applied;
(3) the Nexen parties' claims were timely filed under Alberta's repose statute; and,
alternatively, (4) the Nexen parties' claims were timely filed under Texas's repose
statute. (2) In particular, the Nexen parties argued that the pipeline portion of GIE's
work was only part of the work that GIE had contracted to do for the Masila Project
and that GIE's overall work was not substantially completed until at least July of
1994.

 GIE filed a summary-judgment reply, in which it again argued that the result
was the same under either Texas or Alberta law and in which GIE also clarified its
summary-judgment grounds by arguing that, because the Nexen parties had sued for
GIE's actions relating to the pipeline portion of the Masila Project, the accrual date
for calculating the statutes of repose should be the date that GIE finished its work on
the pipeline. In their supplemental briefing below, the Nexen parties responded that
GIE could not sever its work under the contract into discrete portions merely to
invoke the statutes of repose starting at an earlier date. GIE then filed another brief,
again asserting that the result was the same under either Texas or Alberta law and
that, for purposes of calculating the repose statutes' accrual dates, the pipeline portion
of GIE's work was severable from its overall work. (3)

 In October 2004, the trial court rendered a take-nothing summary judgment in
favor of GIE on all of the Nexen parties' claims against it. The summary-judgment
order did not specify the grounds upon which it was rendered.

Standard of Review


 GIE moved for traditional summary judgment. See Tex. R. Civ. P. 166a(c). 
Summary judgment under rule 166a(c) is proper only when a movant establishes that
there is no genuine issue of material fact and that it is entitled to judgment as a matter
of law. Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). A
defendant is entitled to summary judgment if the evidence disproves as a matter of
law at least one element of each of the plaintiff's causes of action or if it conclusively
establishes all elements of an affirmative defense. Id.

 In our review, we indulge every reasonable inference in favor of the
nonmovant, resolve any doubts in its favor, and take as true all evidence favorable to
it. Id. When, as here, an order granting summary judgment does not specify the
grounds upon which the trial court ruled, we must affirm to the extent that any of the
summary judgment grounds is meritorious. See Star-Telegram, Inc. v. Doe, 915
S.W.2d 471, 473 (Tex. 1995).

 The statute of repose operates as an affirmative defense. Ryland Group, Inc.
v. Hood, 924 S.W.2d 120, 121 (Tex. 1996). Accordingly, GIE, as the traditional
summary-judgment movant, had the burden conclusively to prove each essential
element of that defense. Id. Only if GIE carried this burden would the burden then
shift to the Nexen parties to raise a fact issue precluding summary judgment on this
defense. See, e.g., id.

Choice of Law


 In their first argument under their issue, the Nexen parties assert that the statute
of repose of Alberta, Canada, rather than of Texas, applied to their claims because,
among other things, both the contract and the amended contract called for application
of Alberta's law. GIE responds that the Nexen parties waived the application of
Alberta law for various reasons and that, in any event, the same result obtains under
either jurisdiction's repose law.

 The contract and the amended contract between the Nexen parties and GIE
expressly called for the application of the laws of Alberta, Canada. Texas courts
generally apply Texas procedural law even while applying the parties' contractual
choice of law for substantive matters. See Ill. Tool Works, Inc. v. Harris, 194 S.W.3d
529, 532 (Tex. App.--Houston [14th Dist.] 2006, no pet.). Statutes of repose have
been described as a substantive definition of rights, as opposed to a procedural
limitation on rights. (4) E.g., Trinity River Auth. v. URS Consultants, Inc.-Tex., 889
S.W.2d 259, 261 (Tex. 1994). Therefore, if the choice-of-law provision is
enforceable, it requires the application of Alberta's statute of repose.

 GIE's summary-judgment argument was consistently that the two jurisdictions'
statutes of repose did not differ materially, so that the Nexen parties would lose under
either law. The Nexen parties argued below, as they do on appeal, that the contract
and the amended contract required the application of Alberta law and, alternatively,
that even if Texas law applied, they would prevail. The trial court did not recite in
its summary-judgment order which law it had applied, and there is no other choice-of-law ruling that we may consider. (5) However, "[b]ecause the question of which . . . law
applies is one for the court, in the absence of any indication as to which . . . law the
trial court actually applied, we presume that the trial court correctly analyzed the
[applicable choice-of-law rules], took judicial notice of the relevant law brought to
its attention, and applied the correct law according to the established choice of law
principles." State Nat'l Bank v. Academia, Inc., 802 S.W.2d 282, 290 (Tex.
App.--Corpus Christi 1990, writ denied) (considering implicit ruling under Texas
Rule of Evidence 202, concerning laws of other states); see also In re Estate of
Loveless, 64 S.W.3d 564, 575 (Tex. App.--Texarkana 2001, no pet.) ("A court shall
take judicial notice if requested by a party and supplied with the necessary
information. A party who intends to raise an issue concerning the law of a foreign
country must give written notice and furnish all parties copies of any written materials
or sources the party intends to use as proof of the foreign law. The determination of
the laws of a foreign country is a question of law for the trial court. Therefore, though
the trial court did not explicitly refer to the provisions of Honduran law supplied by
Wanda in its order granting summary judgment or at the hearing on her motion, we
must presume it took judicial notice of those provisions.").

A. GIE's Arguments on Appeal

 GIE devotes a large portion of its appellate brief to the argument that the Nexen
parties "waived" the application of Alberta law because (1) they "did not seek and
receive a ruling pursuant to Rule 203 of the Texas Rules of Evidence"; (2) they
invoked Texas substantive law by seeking attorney's fees in their petition under a
Texas statute; and (3) they allegedly "failed to sufficiently apprise the court of
Alberta law and its application to this case." We reject GIE's waiver arguments. 

 First, we note that GIE--through its answer's allegation that the Nexen parties'
claims were barred under the repose laws of Texas or Alberta--was the first party to
raise the choice-of-law issue. Indeed, because the contracts expressly called for
application of Alberta law, GIE, as the summary-judgment movant, had the burden
to demonstrate conclusively either (1) that the Alberta statute of repose barred the
Nexen parties' claims; (2) that the contracts' choice-of-law provisions were invalid,
so that the Texas statute of repose applied and barred the Nexen parties' claims; or,
as GIE actually chose to do, (3) that no material difference existed between
application of the two jurisdictions' statutes of repose, so that the Nexen parties'
claims were barred under either law. In attempting to prove the third matter
conclusively, GIE itself produced and relied on the Alberta statute and two Alberta
cases. (6) Having litigated under Alberta and Texas law, GIE cannot now argue that the
Nexen parties did not sufficiently raise the issue or that they are somehow estopped
from asserting the application of Alberta's law. Moreover, rule 203, by its plain
language, does not require an express, written ruling; none of the cases that GIE cites
stands for this proposition; and, as explained above, we deem the trial court to have
made the proper choice of law when, as here, it is presented with the choice-of-law
issue and the evidence in support of it. See Tex. R. Evid. 203 (not mentioning that
express, written ruling is required); In re Estate of Loveless, 64 S.W.3d at 575; cf.
State Nat'l Bank, 802 S.W.2d at 290 (similar holding under Texas Rule of Evidence
202); Tex. R. App. P. 33.1(a)(2)(A) (allowing for implicit rulings to preserve error). 
Finally, the Alberta case law, the Alberta Limitations Act, and the ALRI report (7) that,
together, both parties presented below are the type of materials contemplated under
rule 203 to prove foreign jurisdictions' laws. (8) See Tex. R. Evid. 203 (allowing court
to consider, in determining law of foreign country, "any material or source . . .
including but not limited to affidavits, testimony, briefs, and treatises"). In fact, if
this type of evidence did not suffice, then GIE--which presented this same type of
evidence in support of its own summary-judgment motion--could not have carried
its burden of showing conclusively that the Alberta and Texas statutes of repose were
materially similar.

B. Which Law Applied

 "The most basic policy of contract law is the protection of the justified
expectations of the parties." Chase Manhattan Bank, N.A. v. Greenbriar N. Section
II, 835 S.W.2d 720, 723 (Tex. App.--Houston [1st Dist.] 1992, no writ) (citing
DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 677 (Tex. 1990)). "The parties'
understanding of their respective rights and obligations under the contract depends
in part upon how certain they are about how the law will interpret and enforce their
agreement." Id. (citing DeSantis, 793 S.W.2d at 677). When, as here, "the parties
reside or expect to perform their respective obligations in different jurisdictions, they
may be uncertain about which jurisdiction's law will govern the construction and
enforcement of the contract." Id. (citing DeSantis, 793 S.W.2d at 677). "In an
attempt to avoid this uncertainty, they may express in their agreement their choice
that the law of a specified jurisdiction will apply to their contract." Id. (citing
DeSantis, 793 S.W.2d at 677). "Judicial respect for their choice promotes the policy
of protecting their expectations." Id. (citing DeSantis, 793 S.W.2d at 677).

 "However, the parties' freedom to choose which jurisdiction's law will apply
to their agreement is not unlimited." Id. (citing DeSantis, 793 S.W.2d at 677). "They
cannot require that their contract be governed by the law of a jurisdiction which has
no relation whatsoever to them or their agreement." Id. (citing DeSantis, 793 S.W.2d
at 677). "Nor can they, in their agreement, thwart or offend the public policy of the
state whose law would otherwise apply." Id. (citing DeSantis, 793 S.W.2d at 677).

 These principles are embodied in section 187 of the Restatement (Second) of
Conflicts of Law, which the Texas Supreme Court has adopted for review of choice-of-law clauses. See DeSantis, 793 S.W.2d at 677-78 (adopting same). Section 187
provides as follows:

 (1) The law of the state chosen by the parties to govern their
contractual rights and duties will be applied if the particular issue is one
which the parties could have resolved by an explicit provision in their
agreement directed to that issue.


 (2) The law of the state chosen by the parties to govern their
contractual rights and duties will be applied, even if the particular issue
is one which the parties could not have resolved by an explicit provision
in their agreement directed to that issue, unless either


 (a) the chosen state has no substantial relationship to the
parties or the transaction and there is no other reasonable
basis for the parties' choice, or


 (b) application of the law of the chosen state would be contrary
to a fundamental policy of a state which has a materially
greater interest than the chosen state in the determination
of the particular issue and which, under the rule of § 188, (9)
would be the state of the applicable law in the absence of
an effective choice of law by the parties.


 . . . .

Restatement (Second) of Conflict of Laws § 187 (1971).

 We conclude that, under either Restatement section 187(1) or 187(2), the
Alberta statute of repose applied. (10) If, for example, the issue of what statute of repose
to apply is one that "the parties could have resolved by an explicit provision in their
agreement directed to that issue," then we would apply section 187(1). Id. § 187(1);
see Alberta Limitations Act, R.S.A., c. L-12, s. 7 (2000) ("[I]f an agreement
expressly provides for the extension of a limitation period provided by this Act, the
limitation period is altered in accordance with the agreement."); cf. Kenneco Energy,
Inc. v. Johnson & Higgins of Tex., 921 S.W.2d 254, 262 n.9 (Tex. App.--Houston
[1st Dist.] 1995) ("A party may contractually lengthen a statute of limitation"),
modified on other grounds, 962 S.W.2d 507 (Tex. 1998). If section 187(1) applies,
then we would apply the parties' contractual choice of Alberta law. 

 If, on the other hand, the issue of what statute of repose to apply is one "that
the parties could not have resolved by an explicit provision in their agreement
directed to that issue," then we would apply section 187(2). Id. § 187(2) & cmt. d
("Examples of such questions [falling under section 187(2)] are those involving
capacity, formalities and substantial validity."); Trinity River Auth., 889 S.W.2d at
261 (indicating that statutes of repose have been categorized as substantive, rather
than procedural). Under section 187(2), we would apply the parties' contractual
choice of Alberta law unless (1) Alberta has no substantial relationship to the parties
or the transaction or, (2) assuming without deciding that Texas has a materially
greater interest in determining the repose issue, the application of Alberta repose law
would be contrary to a fundamental Texas public policy and Texas has the most
significant relationship to the transaction and the parties. See DeSantis, 793 S.W.2d
at 677-78; Restatement (Second) of Conflict of Laws § 187(2).

 Under our first inquiry of section 187(2)--whether Alberta has a substantial
relationship to the parties or the transaction--the proper inquiry is whether "the
contract bears a reasonable relation to the chosen state . . . ." First Commerce Realty
Investors v. K-F Land Co., 617 S.W.2d 806, 808-09 (Tex. Civ. App.--Houston [14th
Dist.] 1981, writ ref'd n.r.e.); see DeSantis, 793 S.W.2d at 678 (applying "substantial
relationship" terminology for same test). (11) Here, (1) the amended contract recited that
it was executed in Calgary, Alberta, Canada; (2) the amended contract was signed by
COIL's representative who officed in Calgary, Alberta, Canada; and (3) the contract
and the amended contract required that GIE's invoices and notices be sent to a
representative or to an office in Calgary, Alberta, Canada. The Nexen parties and the
transaction were thus substantially related to Alberta, Canada. See DeSantis, 793
S.W.2d at 678-79 (holding that chosen state's law had substantial relationship to
parties and transaction because one of parties had corporate office in that state and
because some of parties' negotiations occurred there). Accordingly, the parties'
choice of Alberta law must be respected unless the application of Alberta law offends
fundamental Texas public policy and Texas has the most significant relationship to
the transaction and parties. See DeSantis, 793 S.W.2d at 677-78; Restatement
(Second) of Conflict of Laws § 187(2)(b).

 As for our second inquiry under Restatement section 187(2), we begin with the
issue of whether application of Alberta repose law would be contrary to a
fundamental Texas public policy. (12) Generally speaking, application of another
jurisdiction's laws is not contrary to the forum state's fundamental public policy
merely because application of the other state's law leads to a different result from the
result that would be obtained if the forum state's law were applied. DeSantis, 793
S.W.2d at 680 (construing Restatement (Second) of Conflicts of Law § 187
cmt. g). Likewise, the fact that the other state's law differs materially from that of the
forum state does not itself show that application of the other state's law would offend
Texas public policy. Id. Rather, in determining whether public policy would be
violated by the application of another state's law,

 the focus is on whether the law in question is a part of state policy so
fundamental that the courts of the state will refuse to enforce an
agreement contrary to that law, despite the parties' original intentions,
and even though the agreement would be enforceable in another state
connected with the transaction.


Id. Moreover, if the public policies in the forum state and the parties' chosen state
"are the same, different approaches do not contravene [the policies] just because one
[approach] is somewhat stricter than the other." Chesapeake Oper., Inc. v. Nabors
Drilling USA, Inc., 94 S.W.3d 163, 178 (Tex. App.--Houston [14th Dist.] 2002, no
pet.). 

 Here, the Texas repose statute applies more to a specific group of plaintiffs,
whereas the Alberta statute is of general application, and the statutes have different
accrual dates. Compare Tex. Civ. Prac. & Rem. Code Ann. § 16.008(a) (providing
for 10-year statute of repose for engineers and certain other professionals) with
Alberta Limitations Act, R.S.A., c. L-12, s. 3(1)(b) (2000) (providing for general
10-year statute of repose). Nonetheless, each jurisdiction has a repose statute of 10
years. Id. Selection of Alberta substantive law thus subjects the Nexen parties to
some repose statute, rather than freeing them of one altogether. Additionally, the
policies and purposes underlying the two jurisdictions' repose statutes are similar. (13) 
See Chesapeake Oper., Inc., 94 S.W.3d at 178 (indicating that if public policies in
forum state and parties' chosen state "are the same, different approaches do not
contravene [the policies] just because one [approach] is somewhat stricter than the
other."). Furthermore, the mere fact that Alberta's repose law differs to some extent
from Texas's does not make the Alberta law contrary to Texas's fundamental public
policy, even if the application of Alberta's repose law would lead to a different result. 
See DeSantis, 793 S.W.2d at 680. Finally, at least one Texas court, although it did
not address the issue of whether doing so would violate a fundamental public policy
of Texas, has applied another jurisdiction's statute of repose. See Crisman v. Cooper
Indus., 748 S.W.2d 273, 280 (Tex. App.--Dallas 1988, writ denied) (applying
another state's statute of repose under pre-DeSantis choice-of-law rule for tort
actions, even when Texas did not have applicable statute of repose for that tort); cf.
Allison v. ITE Imperial Corp., 928 F.2d 137, 145 (5th Cir. 1991) (holding that
application of another state's statute of repose did not violate fundamental public
policy of forum state of Mississippi); Boudreau v. Baughman, 322 N.C. 331, 342,
368 S.E.2d 849, 858 (N.C. 1988) (holding that application of another state's statute
of repose did not violate fundamental public policy of forum state of North Carolina). 
Accordingly, we conclude that the application of Alberta's statute of repose does not
offend any fundamental public policy of Texas, and we thus need not decide whether
Texas has the most significant relationship to the transaction and parties.

 We hold that, under either provision of Restatement section 187, Alberta law
applied to the Nexen parties' claims. Accordingly, we further hold that the trial court
could not have rendered summary judgment on the basis that the Texas statute of
repose applied to those claims, and we thus deem the trial court to have applied
Alberta law in its summary-judgment determination. See In re Estate of Loveless, 64
S.W.3d at 575; cf. State Nat'l Bank, 802 S.W.2d at 290 (under Texas Rule of
Evidence 202). We thus need not reach the Nexen parties' alternative arguments
under their issue that, if the Texas statute of repose applied, that statute did not bar
their claims.

The Alberta Statute of Repose


 In the next argument under their sole issue, the Nexen parties assert that the
trial court erred in rendering summary judgment because GIE did not conclusively
demonstrate that the Alberta statute of repose barred their claims. In particular, the
Nexen parties argue that Alberta law does not allow GIE to divide up its work under
the contract in order to obtain an earlier accrual date.

 In pertinent part, the Alberta statute of repose, which is part of the Alberta
"Limitations Act," provides:

 3. Limitations periods


 (1) . . . [I]f a claimant does not seek a remedial order within


 . . .


 (b) 10 years after the claim arose,


 . . . the defendant, on pleading this Act as a defence, is entitled to
immunity from liability in respect of the claim.


 . . .


 (3) For the purposes of subsection (1)(b),


 (a) a claim or any number of claims based on any
number of breaches of duty, resulting from a
continuing course of conduct or a series of related
acts or omissions, arises when the conduct
terminates or the last act or omission occurs;


 (b) a claim based on the breach of a duty arises when
the conduct, act or omission occurs;


 . . . .


Alberta Limitations Act, R.S.A., c. L-12, ss. 3(1)(b), 3(3)(a)-(b) (2000). The
defendant has the burden of proof under section 3(1)(b). Id. s. 3(5)(b). The
Limitations Act does not define the term "conduct" as used in section 3(3)(a) or
expressly state that conduct under a contract can be divided into discrete parts, the
ending of each of which triggers the repose period, absent such a division in the
contract itself.

 In its summary-judgment motion, GIE relied on sections 3(1)(b) and 3(3)(a) to
defeat the Nexen parties' claims. In its appellee's brief, GIE argues that the summary
judgment may be affirmed based on the limitations accrual date specified in
Limitations Act section 3(3)(b): "a claim based on the breach of a duty arises when
the conduct, act or omission occurs." GIE did not assert this provision of the
Limitations Act as a basis for summary judgment, however, instead relying on section
3(3)(a): "a claim or any number of claims based on any number of breaches of duty,
resulting from a continuing course of conduct or a series of related acts or omissions,
arises when the conduct terminates or the last act or omission occurs." (14) Summary
judgment cannot be rendered on a basis that was not asserted in the movant's motion
as a ground for summary judgment. See, e.g., Postive Feed, Inc. v. Guthmann, 4
S.W.3d 879, 881 (Tex. App.--Houston [1st Dist.] 1999, no pet.). We thus consider
only whether GIE proved conclusively that the Alberta Limitations Act sections
3(1)(b) and 3(3)(a) barred the Nexen parties' claims.

 There is relatively little Alberta case law interpreting section 3(3)(a). What
case law there was at the time of summary judgment, the parties produced. The case
law that the parties produced does not resolve the question of whether a contracting
party's overall work may be divided piecemeal for purposes of determining when the
statute of repose is triggered, when the contract does not so divide the work. (15) 
Nonetheless, we conclude that, what Alberta law there is suggests that Alberta's
statute of repose bars the Nexen parties' claims in this case. 

 Section 3(3)(a) is written in reference to the claim made: "[A] claim or any
number of claims based on any number of breaches of duty . . . ." Alberta
Limitations Act, R.S.A., c. L-12, s. 3(3)(a) (2000) (emphasis added). More
specifically, section 3(3)(a)'s repose period is triggered only when the breach of duty
on which the claim is based results from a continuing course of conduct; the
triggering events (termination of conduct or last act or omission) are thus also tied to
the breach of the duty on which the claim is based. It is true that, generally speaking,
Alberta limitations statutes are to be strictly construed. See Campbell Estate v. Fang,
[1994] A.J. No. 521, at ¶ 10 (considering another limitations statute that provided, in
terms similar to part of Limitations Act section 3(3)(a), that one year from "date when
the professional services terminated"). That is, "[b]efore a person should be deprived
of his or her cause of action, the language in the limiting statute should be clear and
unambiguous." Id. But the rule of strict construction generally makes a difference
only if the statute's language is ambiguous. See Cail v. Serv. Motors, Inc., 660
S.W.2d 814, 815 (Tex. 1983) ("If the disputed statute is clear and unambiguous
extrinsic aids and rules of statutory construction are inappropriate . . . , and the statute
should be given its common everyday meaning.") (citation omitted); City of Houston
v. Jackson, 192 S.W.3d 764, 770 (Tex. 2006) ("When the statutory language is
unambiguous, we must apply the statute as written."). The plain language of section
3(3)(a) is not ambiguous because it leads to only one conclusion: that the two listed
triggering events are tied to the breach of duty on which the claim is based.

 We now consider the pleadings and the summary-judgment evidence in light
of the contract, the amended contract, and the law. The Nexen parties are correct that
both contracts spoke of GIE's work on the Masila Project as a whole, generally
without breaking down that work into discrete divisions other than into Phase 1 and
Phase 2--neither of which phases encompassed only the pipeline work. Nonetheless,
the Nexen parties' petition alleged that "because of the manner in which GIE
designed the Pipeline and the Planned Pipeline Route, the precipitation and flooding
caused the pipeline to move," thereby damaging the pipeline. (Emphasis added.) 
Their claims were thus squarely--and completely--based on GIE's engineering and
design work on the pipeline, rather than on other aspects of the Masila Project. GIE
presented summary-judgment evidence that, when viewed in the light most favorable
to the Nexen parties, showed that the pipeline was designed, was constructed, and
became operational no later than August 1993, with only minor punch-list items and
"ROW clean-up" to be done after that date. For example, GIE's vice-president
described GIE's pipeline work as substantially completed by July 1993. Likewise,
a June 1993 "project status report" indicated that "[t]he . . . Main Export Pipeline was
Mechanically accepted by [COIL] on 26th June 1993. Only minor punchlist items
and ROW clean-up remain." The Nexen parties' claims were based on GIE's conduct
in "design[ing] the Pipeline and the Planned Pipeline Route," which conduct
constituted the sole "breaches of duty" upon which their claims were based. See
Alberta Limitations Act, R.S.A., c. L-12, s. 3(3)(a) (2000). GIE thus carried its
burden of showing conclusively both that its last relevant act or omission in
engineering and designing the pipeline occurred more than 10 years before suit was
filed and that GIE terminated its relevant engineering and design work on the pipeline
more than 10 years before suit was filed. Accordingly, it is immaterial that the
contracts viewed GIE's services in terms of the overall Masila Project or that other
summary-judgment evidence raised a fact issue on whether GIE's work continued on
aspects of the Masila Project other than the relevant pipeline work after July 1993. (16) 
 Seidel v. Kerr, on which the Nexen parties rely, does not require a different
result. See id. [2003] 330 A.R. 284, 19 Alta. L.R. (4th) 201. Seidel involved a suit
for shareholder oppression, and the claims there were based on the defendant's
continuing actions constituting fraudulent or wrongful conduct. See id. at ¶ 5. The
trial court determined that the limitations period, under the Limitations Act's
predecessor, ran from the date when the claimants should have first discovered the
breach of duty; the Seidel court disagreed, holding that limitations had not run
because the claims were based on the defendant's course of conduct that continued
thereafter. See id. at ¶¶ 14-15, 48-51 ("The trial judge focused on the first act in the
course of conduct and treated the entire series of transactions as one act. This is not
logical when the claim involves a series of acts amounting to a course of oppressive
conduct.") (emphasis added). Here, in contrast, the claims involve a course of
conduct leading up to and including the last day of the relevant work on the pipeline,
not acts occurring afterwards on other aspects of the Masila Project.

 Although the Alberta statute of repose is to be strictly construed and the
contracts defined GIE's work in terms of the overall project divided only into Phase
1 and Phase 2, the repose statute unambiguously ties the triggering events for repose
to the breaches of duty on which the claims are based--here, GIE's engineering and
design work on the pipeline and its placement. Accordingly, we hold that the trial
court did not err in rendering summary judgment on the basis that the Alberta statute
of repose barred the Nexen parties' claims.

Conclusion


 We overrule the Nexen parties' issue. We affirm the judgment of the trial
court.



 Tim Taft

 Justice


Panel consists of Justices Taft, Keyes, and Hanks.
1. In support of this summary-judgment ground, GIE relied on--and attached as
summary-judgment evidence--the Alberta repose statute and two cases from
that jurisdiction.
2. In support, the Nexen parties attached the Alberta repose statute, several cases
from that jurisdiction, and one of the Alberta Law Reform Institute's ("ALRI")
reports on limitations.
3. In this briefing, GIE again cited to and relied on Alberta case law.
4. "Unlike traditional limitations provisions, which begin running upon accrual
of a cause of action, a statute of repose runs from a specified date without
regard to accrual of any cause of action." Trinity River Auth. v. URS
Consultants, Inc.-Tex., 889 S.W.2d 259, 261 (Tex. 1994). Statutes of repose
thus may "potentially cut off a right of action before it accrues." Id. at 263-64. 
It is for this reason that statutes of repose are viewed as substantive, rather than
procedural.
5. The Nexen parties argue that a docket-sheet entry indicates that the trial court
applied the Alberta statute of repose. GIE contests that we may consider a
docket-sheet entry to be the equivalent of an express ruling. See Hamilton v.
Empire Gas & Fuel Co., 134 Tex. 377, 384-85, 110 S.W.2d 561, 566 (1937)
(indicating that docket-sheet entry is generally not accepted as substitute for
ruling entered of record); Energo Int'l Corp. v. Modern Indus. Heating, Inc.,
722 S.W.2d 149, 151 n. 2 (Tex. App.--Dallas 1986, no writ) (indicating that
docket-sheet entry ordinarily forms no part of record that may be considered,
but is instead memorandum made for trial court's and clerk's convenience). 
Given our disposition below, we need not determine whether the docket-sheet
entry constituted an express ruling on the choice-of-law matter.
6. We note that GIE's proof showed not that the statutes are materially similar,
but that they are worded differently in material ways. For example, the
applicable portion of the Alberta statute of repose provides that "a claim or any
number of claims based on any number of breaches of duty, resulting from a
continuing course of conduct or a series of related acts or omissions, arises
when the conduct terminates or the last act or omission occurs.
" Alberta
Limitations Act, R.S.A., c. L-12, s. 3(3)(a) (2000) (emphasis added). In
contrast, the applicable Texas statute of repose requires that suit be filed "not
later than 10 years after the substantial completion of the improvement or the
beginning of operation of the equipment in an action arising out of a defective
or unsafe condition of the real property, the improvement, or the equipment."
Tex. Civ. Prac. & Rem. Code Ann. § 16.008(a) (Vernon 2002) (emphasis
added). Because GIE's evidence showed that the two jurisdictions' statutes of
repose differed materially, it was appropriate for the trial court to conduct a
choice-of-law analysis.
7. The ALRI report that the Nexen parties presented in support of the application
of Alberta's law was an earlier version of the same report on which at least two
Alberta courts have relied--a fact that was also shown below by virtue of those
courts' opinions having been produced for the trial court's consideration. See
Seidel v. Kerr, [2003] 330 A.R. 284, 19 Alta. L.R. (4th) 201, at ¶ 45; Bowes v.
City of Edmonton, [2003] A.J. No. 700, 2003 ABQB 492, 2003 AB.C. LEXIS
1644, at ¶ 89.
8. The trial court could consider the evidence of Alberta's law supplied by both
parties, regardless of who had the burden of proof. See PennWell Corp. v. Ken
Assocs., Inc., 123 S.W.3d 756, 761 n.4 (Tex. App.--Houston [14th Dist.] 2003,
pet. denied).
9. Restatement (Second) of Conflicts of Law section 188 provides in pertinent
part that "the rights and duties of the parties with respect to an issue in contract
are determined by the local law of the state which, with respect to that issue,
has the most significant relationship to the transaction and the parties under the
principles states in [Restatement (Second) of Conflicts of Law] section 6."
Restatement (Second) of Conflict of Laws § 188 (1971). 
10. Because the resolution of the choice-of-law issue would be the same under
either Restatement section, we need not decide whether Restatement section
187(1) or 187(2) applied.
11. The First Commerce Realty Investors court, like several courts predating the
Texas Supreme Court's decision in DeSantis, used the language "reasonable
relation[ship]." See First Commerce Realty Investors v. K-F Land Co., 617
S.W.2d 806, 808-09 (Tex. Civ. App.--Houston [14th Dist.] 1981, writ ref'd
n.r.e.); see also Hi Fashion Wigs Profit Sharing Trust v. Hamilton Inv. Trust,
579 S.W.2d 300, 302 (Tex. Civ. App.--Eastland 1979, no writ). In contrast,
the DeSantis court used the term "substantial relationship," which the court
adopted from Restatement (Second) of Conflict of Laws section 187(2)(a). See
DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 678 (Tex. 1990). We need not
determine what, if any, difference exists between the two standards because we
conclude, based on this record, that the applicable relationships with Alberta
sufficed under any possible reading of either standard.
12. Again, we assume without deciding that Texas law has a materially greater
interest in this issue than does Alberta.
13. See Trinity River Auth., 889 S.W.2d at 263-64 (indicating that purpose of
limitations statutes in general, and of section 16.008 in particular, is to compel
exercise of right of action within reasonable time so that opposing party has
fair opportunity to defend before evidence is stale); Alberta Law Reform
Institute, Limitations, at 1-2 (Report No. 55, Dec. 1989) (indicating that
concept of repose serves interests of defendants by providing for absolute cut-off date for claims, in order to facilitate long-term planning by those persons,
as well as to require bringing of claims before evidence becomes "defective
because of the passage of time").
14. GIE's summary-judgment motion did quote both sections 3(3)(a) and 3(3)(b)
and once stated that the repose period ran from the alleged breach or the date
of the work's substantial completion, but the overall gist of GIE's motion was
that Limitations Act section 3(1)(b) and 3(3)(a)--the latter of which GIE
construed as being triggered upon substantial completion of the work--barred
the Nexen parties' claims. Because "[s]ummary judgment is a harsh remedy,"
an appellate court "will strictly construe summary judgment in procedural and
substantive matters against the movant." Tanksley v. CitiCapital Commercial
Corp., 145 S.W.3d 760, 763 (Tex. App.--Dallas 2004, pet. denied) (citations
omitted). Accordingly, we must strictly construe GIE's summary judgment
grounds. Castillo v. Flores, No. 01-05-00760-CV, 2006 WL 488609, at *9
(Tex. App.--Houston [1st Dist.] Mar. 2, 2006, no pet.). Given a fair reading
and a strict construction, GIE's summary-judgment ground was that the
Limitations Act section 3(1)(b) and 3(3)(a) barred the Nexen parties' claims. 
This is also how the Nexen parties interpreted the motion's grounds below:
their summary-judgment response focused--without correction by GIE in its
summary-judgment reply brief--on Limitations Act section 3(3)(a).
15. None of the case law that the parties produced expressly decides this issue,
some of it contains only dictum concerning section 3(3)(a), and some of it
interprets different limitations statutes with somewhat similar wording. See
Bowes v. City of Edmonton, [2003] A.J. No. 700, 2003 ABQB 492, 2003
AB.C. LEXIS 1644, at ¶¶ 74-76, 92, 114, 119-22 (cited by both parties;
providing that, under predecessor to Limitations Act, repose period began
running on date that construction of plaintiffs' homes was finished because that
was date that their claims against defendant, who had sold them their land,
were discoverable; containing only dictum on purposes of current Limitations
Act section 3(3)(b)); Seidel v. Kerr, [2003] 330 A.R. 284, 19 Atla. L.R. (4th)
201, at ¶¶ 42-45 (cited by the Nexen parties; stating in dictum rationale behind
Limitations Act section 3(3)(a) and applying that rationale to hold that
shareholder-oppression suit was not barred by repose); Badger Daylighting,
Inc. v. Sunoma Energy Corp., [2003] 19 Alta. L.R. (4th) 54, 10 W.W.R. 480,
at ¶ 69 (cited by the Nexen parties; concerning whether lien was timely filed
when it was filed during period that work was abated for weather); Campbell
Estate v. Fang, [1994] A.J. No. 521, at ¶ 16 (cited by the Nexen parties;
considering different limitations statute, which provided (like part of section
3(3)(a)) that suit must be brought within one year from "date when the
professional services terminated"; not considering accrual date, but instead
whether claimant fell within class of persons to whom statute applied). Some
of the case authority that the parties produced was also inapposite. See Herron
v. Hunting Chase, Inc., [2003] 330 A.R. 53, 16 Alta. L.R. (4th) 225, at ¶¶
19-23 (relied on by the Nexen parties; considering meaning of "substantial
performance" for purposes of common-law anticipatory breach); Allen Farms
Ltd. v. Oliver Indus. Supply Ltd., [1992] 124 A.R. 321, 1992 A.R. LEXIS 4046,
at ¶ 105 (cited by GIE; concerning different limitations statute providing that
"date of substantial performance of the agreement" was accrual date). In short,
none of the parties' authority commands a particular result or is particularly
helpful in this case.
16. For example, viewed in the required light, one of the 1993 status reports also
showed that other engineering projects that the contracts listed among GIE's
responsibilities were on-going at the time that the pipeline went into use. 
Another 1993 status report indicated that the Masila Project reached a "major
milestone" when the pipeline went into use in July and early August 1993. 
However, that same report stated that "[t]he completion and start-up of the
Central Production Facility remains as a challenging task to fulfill the
commitment of the project team"; it recited that "assessment of [GIE's]
remaining work to complete the engineering and procurement activities is
underway"; and the report again showed that other engineering projects that
the contracts listed among GIE's responsibilities were on-going at that time. 
In fact, it was not until July 20, 1994 that GIE certified, as the contract
required, that "all work authorized under the contract has been completed." 
Finally, GIE submitted three invoices to the Nexen parties for work done in
1995. None of this evidence appears to concern GIE's alleged breaches of
duty in their work on the engineering and design of the pipeline and its
placement.