The CHASE MANHATTAN
BANK, N.A., Appellant,

v.

GREENBRIAR NORTH SECTION II, Fred Rizk Construction Company, Peninsula Trade Corporation, N.V., Ibrahim Trade Corporation, N.V., and Fred Rizk, Appellees.

No. 01–91–01046–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 25, 1992.

Rehearing Denied Aug. 20, 1992.

Steve Steward, Houston, for appellant.

Thomas D. Cordell, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and DUNN and WILSON, JJ.

## OPINION

DUNN, Justice.

This is an appeal of a summary judgment granted to appellees in a deficiency suit. We affirm.

### Facts

In June of 1982, Greenbriar North Section II (Greenbriar), a joint venture composed of Fred Rizk Construction Company, Peninsula Trade Corporation, N.V., and Ibrahim Trade Corporation, N.V., executed a promissory note payable to Lincoln First Bank, N.A. (Lincoln), in the principal amount of $5,000,000. The note was executed by Fred Rizk on behalf of Greenbriar and its members. It was negotiated and signed in New York. The note provided that "[t]his note shall be governed by and construed under the laws of the State of New York."

At approximately the same time as the execution of the note, Fred Rizk, individually, signed a guaranty agreement in favor of Lincoln guaranteeing payment of the $5,000,000 note. The guaranty agreement was executed in New York and stated that "[t]his guaranty shall be construed and enforced in accordance with the laws of the State of New York." This provision was included at the insistence of Lincoln.

A deed of trust covering real property in Harris County, Texas, was also executed in favor of Lincoln. The deed of trust incorporated the procedures necessary to foreclose under Texas law. It also provided that the maximum permissible rate of interest on the note would be determined according to New York law. It was executed in Texas. Chase Manhattan Bank, N.A. (Chase), subsequently acquired Lincoln and succeeded to its rights, duties, and obligations under the promissory note, guaranty agreement, and deed of trust.

Greenbriar later executed a renewal note payable to Chase in the principal amount of $5,000,000. The note stated that "[t]his note is to be construed and enforced in accordance with the laws of the State of New York." The renewal note also provided that the maximum rate of interest on it was to be determined in accordance with New York law. The renewal note was executed in Texas.

Fred Rizk signed a guaranty agreement in favor of Chase guaranteeing the renewal note. The guaranty provided that "[t]his guaranty shall be construed and enforced in accordance with the laws of the State of New York."

Thereafter, appellees executed a modification of the deed of trust. The terms, conditions, and provisions of the original deed of trust remained in effect. The modification of the deed of trust was executed in Texas.

Greenbriar subsequently defaulted on payment of the promissory note. On May 3, 1988, Chase foreclosed on the real prop-

erty that secured the note. The property was purchased at foreclosure. Chase then brought suit against appellees seeking to recover the deficiency remaining on the promissory note. Appellees asserted that New York law controlled the deficiency suit pursuant to the notes and that, since Chase had failed to comply with the procedures of New York law regarding deficiency judgments, appellees were discharged from any further liability to Chase. The trial court agreed, granting summary judgment on appellees' motion on December 30, 1988.

It is undisputed that New York has an anti-deficiency statute which prohibits the recovery of a deficiency judgment unless the party seeking the judgment first moves for an order confirming the sale of the property within 90 days of the sale's consummation and obtains a judicial determination of the property's fair market value. It is also undisputed that Chase did not comply with that statute.

### Issue

In its sole point of error, Chase contends that the trial court erred in applying New York law rather than Texas law to its deficiency suit and in thereby granting summary judgment for appellees. We therefore undertake a choice of law analysis to determine if the trial court was correct in applying New York law instead of Texas law.

 The most basic policy of contract law is the protection of the justified expectations of the parties. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991). The parties' understanding of their respective rights and obligations under the contract depends in part upon how certain they are about how the law will interpret and enforce their agreement. *Id.* When the parties reside or expect to perform their respective obligations in different jurisdictions, they may be uncertain about which jurisdiction's law will govern the construction and enforcement of the contract. *Id.* In an attempt to avoid this uncertainty, they may express in their agreement their choice that the law of a specified jurisdiction will apply to their contract. *Id.* Judicial respect for their choice promotes the policy of protecting their expectations. *Id.*

 However, the parties' freedom to choose which jurisdiction's law will apply to their agreement is not unlimited. *Id.* They cannot require that their contract be governed by the law of a jurisdiction which has no relation whatsoever to them or their agreement. *Id.* Nor can they, in their agreement, thwart or offend the public policy of the state whose law would otherwise apply. *Id.*

### Section 187(1) Analysis

 In Texas, choice of law issues are decided by applying section 187 of the Restatement (Second) of Conflicts. *Id.* Section 187 states as follows:

Law of the State Chosen by the Parties (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue. (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties. (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

**724**

Restatement (Second) of Conflict of Laws § 187 (1988); *DeSantis*, 793 S.W.2d at 677. We therefore begin by determining whether the "particular issue" here, whether Chase must have moved for an order confirming the sale of the Harris County property within 90 days of the sale's consummation and obtained a judicial determination of the property's fair market value in order to recover the deficiency, is an issue "which the parties could have resolved by an explicit provision in their agreement directed to that issue." We hold that it is.

Under New York Real Property Actions and Proceedings Law (RPAPL) section 1371, a lender may not recover a deficiency unless it first moves for an order confirming the sale of the property within 90 days of the sale's consummation and obtains a judicial determination of the property's fair market value. N.Y.Real Prop.Acts.Law § 1371(2), (3) (McKinney 1979). Without timely compliance with the statute, the amount paid at foreclosure is deemed to be in full satisfaction of the debt. N.Y.Real Prop.Acts.Law § 1371(3). The parties could have explicitly stated in the note that, as a condition to the recovery of any deficiency, Chase must first move for an order confirming the sale of the property within 90 days of the sale's consummation and obtain a judicial determination of the property's fair market value, rather than incorporating RPAPL section 1371 by referring to "the laws of the State of New York." Therefore, pursuant to section 187(1), the "law of the state chosen by the parties to govern their contractual rights and duties," New York, applies here.

We find support for our holding in comment c to section 187, entitled "Issues the parties could have determined by explicit agreement directed to particular issue." That comment states in relevant part that:

[M]ost rules of contract law are designed to fill gaps in a contract which the parties could themselves have filled with express provisions. This is generally true, for example, of rules relating to construction, *to conditions precedent* and subsequent, to sufficiency of performance and to excuse for nonperformance, including questions of frustration

and impossibility. As to all such matters, the forum will apply the provisions of the chosen law.

Restatement (Second) of Conflict of Laws § 187 cmt. c (1988) (emphasis added).

▪ A "condition precedent" is an act or event, which occurs after formation of the contract, which must occur before there is a right to immediate performance. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976); *Block 316 Garage, Ltd. v. Wortham & Van Liew*, 705 S.W.2d 249, 251 (Tex.App.–Houston [1st Dist.] 1986, writ ref'd n.r.e.). The requirement of New York law that a party move for an order confirming the sale of the property within 90 days of the sale's consummation and obtain a judicial determination of the property's fair market value before a deficiency may be recovered is a condition precedent that must occur before a party can be obligated to pay a deficiency. This type of issue is precisely the type cited by comment c as an example of an issue that could have been resolved by the parties via an explicit provision in their agreement.

▪ We note that the Texas Supreme Court, in *DeSantis*, held that the issue before it was *not* "one which the parties could have resolved by an explicit provision in their agreement." *DeSantis*, 793 S.W.2d at 678. The issue there, however, was whether a noncompetition agreement was enforceable. *Id.* Whether a contract is enforceable is a matter for a court to determine. *See Bendalin v. Delgado*, 406 S.W.2d 897, 899 (Tex.1966); *Calarco v. Southwestern Bell Tel. Co.*, 725 S.W.2d 304, 307 (Tex.App.–Houston [1st Dist.] 1986, writ ref'd n.r.e.). The parties to an agreement are not the ones who determine its enforceability. *See Baron v. Mullinax, Wells, Mauzy & Baab, Inc.*, 623 S.W.2d 457, 461 (Tex.Civ.App.–Texarkana 1981, writ ref'd n.r.e.); *Emco, Inc. v. Healy*, 602 S.W.2d 309, 311 (Tex.Civ.App.–Texarkana 1980, no writ).

▪ Here, however, the issue is merely one of specifically setting out what conditions Chase would have to fulfill before

recovering a deficiency from appellees. Obviously, parties may include whatever conditions in their contract they see fit, as long as the conditions do not violate law or public policy. *Sherwin–Williams Co. v. Perry Co.*, 424 S.W.2d 940, 949 (Tex.Civ. App.–Austin 1968), *writ ref'd n.r.e.*, 431 S.W.2d 310 (1968); *Benson v. Lacy*, 202 S.W.2d 689, 690 (Tex.Civ.App.–Texarkana 1947, no writ). Here, in fact, the condition which could have been explicitly expressed is entirely in line with New York law on the subject. We therefore reach a different result than the one in *DeSantis*.

### Section 187(2) Analysis

 Even if the issue was one which the parties could *not* have resolved by an explicit provision in their agreement, New York's would still be the correct choice of law under section 187(2). We first address, pursuant to section 187(2)(a), whether the chosen state, New York, has a substantial relationship to both the parties and the transaction.

The location of Chase's headquarters and principal place of business, a factor the *DeSantis* court considered relevant, 793 S.W.2d at 678, is New York. (The original holder of the note and guaranty, Lincoln, also has its principal place of business in New York.)

The original note stated that it was to be "governed by and construed under the laws of the State of New York." It was negotiated and signed in New York.

The guaranty agreement stated that it was to be "construed and enforced in accordance with the laws of the State of New York." It was executed in New York.

Both the deed of trust and the modification of the deed of trust provided that the maximum permissible rate of interest on the note would be determined according to New York law.

The renewal note stated that it was "to be construed and enforced in accordance with the laws of the State of New York." It was payable in New York.

The guaranty for the renewal note stated that it was to be "construed and enforced in accordance with the laws of the State of New York."

In *First Commerce Realty Investors v. K–F Land Co.*, 617 S.W.2d 806 (Tex.Civ. App.–Houston [14th Dist.] 1981, writ ref'd n.r.e.), the court considered facts very similar to those of this case. The issue was whether the Louisiana Deficiency Judgment Act applied so as to prevent a deficiency judgment sought in Texas. *Id.* at 807. In holding that Louisiana had a reasonable relationship to the parties and the transaction, the court wrote as follows:

> [Appellant's] principal place of business was in Louisiana ... Above all, the *note* provided that it would be "interpreted and construed" in accordance with the laws of Louisiana. The *deed of trust* provided that ... the note and related loan documents are "to be governed and construed in accordance with the laws of the state of Louisiana." The *guaranty* agreement provides that "this guaranty shall be construed in accordance with the laws of the State of Louisiana and such laws shall govern the interpretation, construction, and *enforcement* hereof."

*Id.* at 809 (emphasis in original). The court concluded that Louisiana law applied. *Id.* With similarly persuasive facts before us here, we conclude that New York had a substantial relationship to the parties and the transaction in this case.

The second and final inquiry under section 187(2) is three-pronged. We must determine whether Texas has a more significant relationship to the parties and transaction than New York, whether Texas has a materially greater interest in deciding whether Chase must have moved for an order confirming the sale of the property within 90 days of the sale's consummation and obtained a judicial determination of the property's fair market value in order to recover the deficiency, and whether the application of New York law would be contrary to a fundamental policy of Texas. Restatement (Second) of Conflict of Laws § 187(2)(b) (1988); *DeSantis*, 793 S.W.2d at 678.

 The "most significant relationship" test employs the following factors:

the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract, and the domicil, residence, nationality, place of incorporation and place of business of the parties. Restatement (Second) of Conflict of Laws § 188 (1971); *DeSantis*, 793 S.W.2d at 678. In regard to the place of contracting, the note and deed of trust were executed in New York, the renewal note and modification deed of trust in Texas. Negotiation of the note occurred in New York; the record is silent regarding where the other instruments were negotiated. Only the renewal note provided for a place of performance; it provided for payment in New York or "at such other place as Payee may designate." The property securing the note and renewal note is located in Texas. The locations of the parties are split between the two states. Considering these factors, we are unable to hold that Texas has a more significant relationship with the parties and the transaction than New York.

■■■ Nor are we able to hold that Texas has a materially greater interest than New York in deciding whether Chase must have moved for an order confirming the sale of the property within 90 days of the sale's consummation and obtained a judicial determination of the property's fair market value in order to recover the deficiency. This would be true even if we held that the subject matter of the suit is the real property rather than the payment of a valid debt. Although the real property at issue here is in Texas, the property has already been foreclosed upon, and there is no issue raised that the foreclosure itself was improper. The issue here is whether Chase can recover a deficiency judgment against appellees; the property is rightfully Chase's regardless of how that question is decided. Although Texas may have an interest in the disposition of property located within its borders, there is no dispute that the property is rightfully in the hands of Chase and would remain so regardless of the outcome of this case.

■■■ In regard to the third prong, Chase argues that enforcement of New York's

anti-deficiency statute violates Texas law. Because that is not the true test, we need not decide that question.

The *DeSantis* court observed that:

Comment g to section 187 does suggest that application of the law of another state is not contrary to the fundamental policy of the forum merely because it leads to a different result than would obtain under the forum's law ... Moreover, the fact that the law of another state is materially different from the law of this state does not itself establish that application of the other state's law would offend the fundamental policy of Texas. In analyzing whether fundamental policy is offended under section 187(2)(b), the focus is on whether the law in question is a part of state policy so fundamental that the courts of the state will refuse to enforce an agreement contrary to that law, despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction.

*Id.* at 680. There is no doubt that the deficiency laws of Texas and New York are materially different. However, we are unable to hold that the right to recover a deficiency judgment without first moving for an order confirming the sale of the property within 90 days of the sale's consummation and obtaining a judicial determination of the property's fair market value is a part of Texas policy "so fundamental" that Texas courts "will refuse to enforce an agreement contrary to that law, despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction." In *First Commerce*, the court held that "[n]o overriding public policy of Texas bears on the enforcement of the Louisiana anti-deficiency judgment statute." 617 S.W.2d at 809. We conclude likewise here. While neither the Restatement nor the cases following section 187, including *DeSantis*, have defined "fundamental policy," *DeSantis*, 793 S.W.2d at 680, we cannot conceive of a reasonable definition that would include the right of a creditor to obtain a deficiency judgment

without first dutifully moving for an order confirming the sale of the property within 90 days of the sale's consummation and obtaining a judicial determination of the property's fair market value. No "fundamental policy" of Texas is implicated, much less offended, in this case.

■■■ Chase argues that the New York anti-deficiency statute is a procedural statute, and that, because matters of procedure "are governed by the law of the state where the action is sought" (here, Texas), then Texas law should apply. In the context of a choice of law determination, however, the issue is not as simple as that.

It is essential to remember that, above all, we are dealing with a question of conflict of laws policy. "The words 'substantive' and 'procedural' ... are not talismanic. Merely calling a legal question by one or the other does not resolve it otherwise than as a purely authoritarian performance." [Citation omitted.] Our real inquiry must be directed to the question whether appellants' right to bring this action involves no more than compliance with procedural requirements extraneous to the substance of their claim, or whether it concerns the very nature and quality of their substantive rights, powers and privileges ...

*Hausman v. Buckley,* 299 F.2d 696, 701 (2d Cir.1962), *cert. denied,* 369 U.S. 885, 82 S.Ct. 1157, 8 L.Ed.2d 286 (1962). Here, the requirement that Chase move for an order confirming the sale of the property within 90 days of the sale's consummation and obtain a judicial determination of the property's fair market value in order to recover the deficiency is clearly not a mere "procedural requirement[ ] extraneous to the subject of [its] claim." Rather, it is an integral part of its claim, because without fulfilling this requirement, the amount paid at foreclosure is deemed fully satisfactory of the debt and the claim for the deficiency can no longer be pursued. N.Y.Real Prop. Acts.Law § 1371(2), (3). The requirement constitutes an essential step toward the recovery of a deficiency judgment. Without taking that step, the goal of obtaining a deficiency judgment cannot be reached. We hold that, for purposes of the choice of

law determination made here, the New York anti-deficiency statute is not merely "procedural."

■■■ Chase refers us to several foreign cases wherein courts have held that New York foreclosure procedures do not apply to property located outside New York. In only one of these cases, however, was there a contractual choice of law made by the parties. That case is *Guardian Life Ins. Co. of America v. Rita Realty,* 17 N.J.Misc. 87, 5 A.2d 45 (Sup.Ct.1939). *Guardian Life* concerned an ejectment action and did not involve the New York statute involved here. The New Jersey court did hold, however, that New York "laws concerning procedure to foreclose mortgages and like proceedings are limited to property located in the state of New York." *Id.* 5 A.2d at 48.

We respectfully decline to follow the New Jersey court's holding. We are not persuaded that New York's policy that its foreclosure laws apply only to property located within its borders works to frustrate the intent of parties who enter into an otherwise perfectly proper agreement that New York law applies. If indeed "the most basic policy of contract law[ ] is the protection of the justified expectations of the parties," *DeSantis,* 793 S.W.2d at 677, then the intent of the parties, clearly expressed in an otherwise proper agreement, is the more important consideration. We note that this conclusion seems in harmony with New York's own conflicts law:

The parties to any contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation which arises out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars ... may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state ...

N.Y.Gen.Oblig.Law § 5–1401(1) (McKinney 1989) (entitled "Choice of Law"). New York, therefore, does not frown on contracting parties agreeing to apply New York law. We do not believe that it offends New York law or policy for New

York law to apply, pursuant to the clearly expressed intent of the parties, to a deficiency suit brought in Texas.

Further, in *Porte v. Polachek*, 150 Misc. 891, 270 N.Y.S. 807 (N.Y.C.Mun.Ct.1934), a New York court, while agreeing that, in general, New York's "mortgage moratorium laws" were "not for benefit of real estate located without the state," indicated that New York law might nevertheless apply to a foreclosure on Illinois real property if the parties had expressed the intent that it would. *Id.* 270 N.Y.S. at 810. The court held that the parties evidently intended Illinois law to govern their contract and that New York law would not apply *"unless proof be adduced clearly showing what the intention of the parties was." Id.* (emphasis added). Here, there is such proof, found in the instruments themselves where the parties expressed their clear intention that New York law apply.

### Conclusion

Having undertaken the applicable choice of law analyses, we conclude that New York law applies. Like the court in *First Commerce,* "we see no reason to frustrate such intention so clearly expressed." 617 S.W.2d at 809. We overrule Chase's point of error and affirm the judgment of the trial court.