**CMA–CGM (AMERICA) INC., Appellant,**

v.

**EMPIRE TRUCK LINES INC., Appellee.**

No. 01–07–00187–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 4, 2008.

Supplemental Opinion on Rehearing March 5, 2009.

F.E. Billings, Billings & Solomon, P.L.L.C., Houston, TX, for Appellant.

Keith M. Remels, Dow, Golub, Berg & Beverly, LLP, Kenneth R. Breitbeil, Brian K. Tully, McFall, Breitbeil & Shults, P.C., Houston, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

ELSA ALCALA, Justice.

This appeal concerns the terms of an Uniform Intermodal Interchange and Facilities Access Agreement ("the Agreement") that provides that the laws of Maryland shall govern over the interpretation of the agreement. Appellant, CMA–CGM (America), Inc., appeals the trial court's dismissal of its claims for indemnification against appellee, Empire Truck Lines Inc. In three issues, CMA contends that the trial court erred by (1) applying Texas law to the Agreement; (2) ruling that the Agreement was not enforceable; and (3) finding that CMA spoliated evidence by losing the chassis made the subject of this suit. We conclude the Agreement is enforceable under Maryland law, which is the law to be applied under the terms of the Agreement. We also conclude that the issue concerning spoliation instruction is not preserved for appeal because the sanctions order was in favor of a person who is not a party to this appeal and the trial court did not rule on the motion for summary judgment pertaining to the spoliation instruction. We reverse and remand.

## Background

Hector Aguirre was an independent contractor truck driver for Empire. Empire sent Aguirre to transport cargo from Longview, Texas to the Port of Houston. The cargo was in a storage container leased by CMA. The cargo was to be transported on an adjustable-length chassis, but the chassis broke apart while its length was being adjusted, causing Aguirre to be injured. Aguirre sued Empire and CMA, as well as other defendants, alleging various causes of action.

CMA filed a cross-claim against Empire asserting the Agreement required Empire

to insure, defend, and indemnify CMA for CMA's own legal fault.

The Agreement contains the following definitions:

4. Equipment: Equipment ... includ[es] ... chassis....

5. Equipment Owner: The holder of beneficial title to the Equipment, regardless of the form of the title.

....

8. Indemnitees: Provider, Equipment Owner and/or Facility Owner, as their interest may appear.

....

11. Motor Carrier: The Party being granted access to the Provider's facilities and/or having physical possession of the Equipment for the purpose of road transport or its designated agent or contractor.

....

14. Provider: the Party authorizing delivery and/or receipt of physical possession of Equipment with a Motor Carrier.

Applying the definitions in the Agreement, Empire is the "Motor Carrier" and CMA is the "Equipment Provider," as well as an "Indemnitee."

Inserting the names of the companies in place of the general terms, Section F.4, "Liability, Indemnity, and Insurance," of the Agreement states,

4. Indemnity: **[EMPIRE] AGREES TO DEFEND, HOLD HARMLESS AND FULLY INDEMNIFY [CMA], AGAINST ANY AND ALL CLAIMS, SUITS, LOSS, DAMAGE OR LIABILITY, FOR BODILY INJURY, DEATH, AND/OR PROPERTY DAMAGE ... ARISING OUT OF OR RELATED TO [EMPIRE'S] USE OR MAINTENANCE OF THE EQUIPMENT DURING AN INTERCHANGE PERIOD; THE PER-FORMANCE OF THIS AGREEMENT; AND/OR PRESENCE ON THE FACILITY OPERATOR'S PREMISES.**

....

6. Insurance: to the extent permitted by law, [Empire] shall provide the following insurance coverages in fulfillment of its legal liability and obligations contained in this Agreement:

a. A commercial automobile liability policy with a combined single limit of $1,000,000 or greater, insuring all Equipment involved in Interchange including vehicles of its agent or contractors; said insurance policy shall name [CMA] as additional insured.

b. A commercial general liability policy with a combined single limit of $1,000,000 or greater[.]

c. [Empire] shall have in effect, and attached to its commercial automobile policy, a Truckers Uniform Intermodal Interchange Endorsement (UIIE–1), which includes the coverages specified in Section F.4.....

The Agreement also expressly states, "If it is determined that, at the time of the interchange, [Empire] was not insured in accordance with Section F.6. of this Agreement, [Empire] shall have been in material breach of this Agreement...." The Agreement also provides, "This Agreement, including its Addendum, but only to the extent that its terms do not conflict with this Agreement, contain[s] the entire Agreement of the Parties hereto." Finally, the Agreement states, "Governing Law: The laws of the state of Maryland, the location at the principal place of business of the Intermodal Association of North America shall govern the validity, construction, enforcement and interpretation

of this Agreement without regard to conflicts of law principles."

Before Aguirre settled his claims with Empire and CMA, he obtained an order from the trial court granting his motion for sanctions due to CMA's failure to produce the chassis and chassis documentation. The order was entitled, "Order on Plaintiff, Hector Aguirre's Motion for Sanctions Against CMA...." The order provided that CMA would be prohibited from entering evidence of maintenance or repairs done to the chassis, other than as reflected in documents that were produced. The order further decreed that at the time of trial the jury would be given an instruction to presume that CMA "intentionally or negligently destroyed evidence that is harmful to their case and that the jury should presume that the missing evidence would have been harmful" to CMA's case.

When Aguirre settled with Empire and CMA, the only remaining controversy was CMA's cross-claim for indemnification from Empire. Empire filed a motion for summary judgment, asserting "[CMA] cannot maintain a claim against Empire." Empire also filed a supplemental motion for summary judgment asserting that, as a matter of public policy, it could not be liable for indemnification to CMA for evidence spoliated by CMA. CMA filed a cross-motion for summary judgment asserting that it established all elements of its breach of contract action against Empire as a matter of law. At the hearing on the motions for summary judgment, the trial court stated that it was not ruling on the motions for summary judgment, but only construing the Agreement as a matter of law. The trial court did not expressly state that it was applying Maryland law, but, immediately before making its ruling, it referred to a case where Maryland law was applied. The trial court announced its decision by stating, "I agree with Empire.

I do not think that the contract requires them to indemnify CMA for their own liability." After the hearing, the trial court entered an order stating,

On the 6th day of November, 2006, came on to be heard the motion of [Empire] to dismiss the cross-claim of [CMA] for indemnity because the indemnity agreement ... was not enforceable, ... the court being of the opinion that said indemnity agreement is not enforceable, it is

ORDERED that the claims of defendant/cross-plaintiff [CMA], against defendant/cross-defendant [Empire], are dismissed with prejudice to the re-filing of same.

## Choice of Law

In its second issue, CMA contends that Maryland law should be applied to interpret the terms of this Agreement. CMA's second issue is premised on the assumption that the trial court applied Texas substantive law to the Agreement. The trial court did not specify whether it was applying Texas or Maryland law to the Agreement, although it appears from the trial court's comments that it was considering Maryland law. Empire responds that indemnity is a procedural issue that should be controlled by the law of the state of Texas, rather than a substantive issue to which the terms of the contract would apply. Empire also responds that applying Maryland law would violate the public policy of Texas because the public policy of the state of Texas limits the rights of parties to contract for indemnity.

Under Texas procedural law, parties "may express in their agreement their choice that the law of a specified jurisdiction will apply to their contract." *Nexen, Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 419 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (quoting *Chase*

14

*Manhattan Bank, N.A. v. Greenbriar N. Section II*, 835 S.W.2d 720, 723 (Tex.App.-Houston [1st Dist.] 1992, no writ)). When, as here, "the parties reside or expect to perform their respective obligations in different jurisdictions, they may be uncertain about which jurisdiction's law will govern the construction and enforcement of the contract." *Id.* (citing *Chase Manhattan*, 835 S.W.2d at 723). "In an attempt to avoid this uncertainty, they may express in their agreement their choice that the law of a specified jurisdiction will apply to their contract." *Id.* (citing *Chase Manhattan*, 835 S.W.2d at 723). "Judicial respect for their choice promotes the policy of protecting their expectations." *Id.* (citing *Chase Manhattan*, 835 S.W.2d at 723) (internal citations omitted). Texas procedural law allows parties to choose the law to be applied in interpreting the substantive terms of an indemnity agreement. *See id.* at 419–20.

Although parties may express in their agreement their choice that the law of a specified jurisdiction will apply to their contract, they may not "thwart or offend the public policy of the state whose law would otherwise apply." *Id.* (citing *Chase Manhattan*, 835 S.W.2d at 723). The Texas Supreme Court has noted that "application of the law of another state is not contrary to the fundamental policy of the forum merely because it leads to a different result than would obtain under the forum's law." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 680 (Tex.1990). "Moreover, the fact that the law of another state is materially different from the law of this state does not itself establish that application of the other state's law would offend the fundamental policy of Texas." *Id.*

Applying Maryland law to this dispute does not violate the public policy of Texas because both Maryland and Texas allow indemnification for a party's own negligence. In Texas, a party may be indemnified for its own negligence if the indemnification agreement meets the "express negligence" test. *See Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex.2004) (citing *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707 (Tex. 1987)). Maryland also allows such provisions to be enforced if they are "clear and unequivocal." *See Mass Transit Admin. v. CSX Transp., Inc.*, 349 Md. 299, 708 A.2d 298, 308 (1998) (citing *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 578 A.2d 1202, 1206–07 (1990)). Here, neither party disputes that if the Agreement meets the appropriate test ("express negligence" in Texas or "clear and unequivocal" in Maryland), then the indemnity provision of the Agreement is enforceable. Texas and Maryland have the same general rule, but the states differ in that Maryland recognizes an exception to the general rule, as explained more fully below. Although Maryland law is not identical to Texas law, the application of Maryland law would not "thwart or offend the public policy of" Texas because Texas and Maryland have the general policy to allow indemnification for one's own negligence. *See Nexen*, 224 S.W.3d at 419.

Because parties "may express in their agreement their choice that the law of a specified jurisdiction will apply to their contract," we hold that, in accordance with the terms of the Agreement entered into by the parties, Maryland law shall govern the validity, construction, enforcement and interpretation of this Agreement. *See id.*[1]

We sustain CMA's second issue.

1. We also note that parties may not "require that their contract be governed by the law of

### Enforceability of the Indemnity Provision Under Maryland Law

In its first issue, CMA contends the trial court erred by dismissing the suit on the grounds that the Agreement was not enforceable. We conclude that this Agreement is enforceable as an insurance contract.

In Maryland, the general rule is that "contracts will not be construed to indemnify a person against his own negligence unless an intention to do so is expressed in those very words or in other unequivocal terms." *Mass Transit*, 708 A.2d at 308 (quoting *Heat & Power*, 578 A.2d at 1206–07). However, the general rule does not apply to an insurance contract. *Id.* (citing *Heat & Power*, 578 A.2d at 1208).

In *Mass Transit*, the Maryland Supreme Court upheld an indemnity provision by concluding that the Mass Transit Administration (MTA) provided indemnification for the liability of CSXT for CSXT's own acts and omissions in "unequivocal terms." *Id.* at 304. The contractual language in the contract between MTA and CSXT stated,

*(b) Indemnification by [MTA]*

(1) [MTA] agrees to indemnify, save harmless, and defend CSXT from any and all casualty losses, claims, suits, damages or liability of every kind arising out of the Contract Service under this Agreement, up to a maximum amount of One Hundred Fifty Million Dollars ($150,000,000), per occurrence, during the term of this Agreement, as excepted or limit-

ed by the terms of subsections (a), (c), (d), and (e), *infra.* This maximum indemnification amount shall include any expenses for outside manpower, for legal representation and for other extraordinary expenses of handling individual claims for [MTA]. . . .

*Id.* at 300. MTA agreed "to self-insure Five Million Dollars ($5,000,000) per occurrence of any casualty claim or loss for which it is responsible" under the contract. *Id.* MTA agreed, at its cost and expense, to procure and maintain "excess liability insurance coverage commonly provided by Railroad operations liability insurance" in the amount of $145 million in excess of the $5 million "self-insured retention." *Id.* The contract further provided: "This insurance shall cover liability assumed by [MTA] under this [contract] . . . and shall name the State of Maryland and [MTA] as insured. Such insurance policies shall name CSXT as an additional insured for CSXT's operation of the Contract Service. . . ." *Id.*

The terms of the Agreement here are similar to the terms in the contract in *Mass Transit* by stating "[Empire] agrees to defend, hold harmless and fully indemnify [CMA], against any and all claims, suits, loss, damage or liability, for bodily injury, death, and/or property damage . . . arising out of or related to [Empire's] use or maintenance of the equipment. . . ." *See id.* We conclude that the terms of the Agreement expressly provide that Empire will indemnify CMA against any and all claims arising out of or related to Empire's use or maintenance of the equipment. *See id.*

a jurisdiction which has no relation whatsoever to them or their agreement," but no one here challenges this Agreement on that ground. *See Nexen Inc. v. Gulf Interstate Engineering Co.*, 224 S.W.3d 412, 419 (Tex.App.-

Houston [1st Dist.] 2006, no pet.) (quoting *Chase Manhattan Bank, N.A. v. Greenbriar N. Section II*, 835 S.W.2d 720, 723 (Tex.App.-Houston [1st Dist.] 1992, no writ)).

We also determine, based on an examination of the purpose of the Agreement, that the Agreement here is similar to the contract in *Mass Transit*. *See id.* In *Mass Transit*, the court examined whether the party giving the indemnification was the hirer or the party performing the service. *Id.* at 303–04. The court noted that the party performing the service would more likely indemnify the party that hired it to perform the service to protect the hirer from vicarious liability. *Id.* The court explained,

> *Heat & Power* involved a promise by one who was hired to perform a service to indemnify the person for whom the service was to be performed. In that relationship the person for whom the service is to be performed incurs a risk that the conduct of the person providing the service will create vicarious liability on the part of the hirer, or that the conduct may involve a non-delegable duty. Consequently, we require that there be no ambiguity and that the indemnification, if intended to embrace the sole negligence of the indemnitee, be unequivocal. The indemnification provision in the instant matter, however, reverses the direction of the indemnification from that more commonly encountered. Here, the hirer of the service gives the indemnity, and the party performing the service is indemnified.

*Id.* (citations omitted). As in *Mass Transit*, this Agreement provides that Empire, the party performing the service and using the equipment, is to indemnify CMA, the party who is providing the equipment, in order to cover the risk of vicarious liability to CMA stemming from Empire's use of the equipment. *See id.*

In *Mass Transit*, the court also noted that the terms of the contract required self-insurance and excess liability insur-ance to cover any claim or loss for which MTA was responsible under the contract. *See id.* at 300. Like the contract in *Mass Transit*, this Agreement requires Empire to provide "insurance coverages in fulfillment of its legal liability and obligations contained in this Agreement."

Our decision is in line with the courts that have analyzed *Mass Transit* to determine that the terms used in the Uniform Intermodal Interchange and Facilities Access Agreement provide for indemnification for the equipment provider's own acts or omissions. *See Garcia v. Maersk, Inc.*, No. 03–CV–5697 FB RML, 2005 WL 1492380, at *4 (E.D.N.Y. June 24, 2005); *Lopez v. Louro*, No. 01 CIV 2490(JSM), 2002 WL 91273, at *1 (S.D.N.Y. Jan.23, 2002). Moreover, another federal court interpreting an agreement with language identical to the Agreement in this case determined that the agreement was one of insurance, stating,

> First, although the Interchange Agreement is not an insurance contract or policy, *per se*, it is an agreement pursuant to which [Motor Carrier] agreed to indemnify [Equipment Provider], defend [Equipment Provider] and procure insurance which would include [Equipment Provider] as an additional insured for claims, suits, losses, damages or liabilities for bodily injury or death arising out of [Motor Carrier]'s use of the chassis or container owned by [Equipment Provider]. These obligations and the terms of art invoked therein are typically part of an insurance contract with an insurance company. Accordingly, the scope of the various obligations has been examined and interpreted by courts and agencies as a part of a body of "insurance law". Therefore, reference to decisions involving these same obligations as they arise in insurance policies is appropriate, as the clear intent of Section F of

the Interchange Agreement is to sort through the insurance related obligations of the signatories. Indeed, Section F is titled "Liability, Indemnity and Insurance" and as provider of the indemnity, short of passing that obligation off to an insurance company, [Motor Carrier] is for all practical purposes an insurer and [Equipment Provider] the insured.

*YK Line v. PB Industries, Inc.,* No. TH02–0074–C–T/H, 2004 WL 1629613, at *4 (S.D.Ind. Apr.20, 2004) (footnote omitted). This Agreement is effectively an insurance contract, which is the exception to the *Mass Transit* general rule that "contracts will not be construed to indemnify a person against his own negligence unless an intention to do so is expressed in those very words or in other unequivocal terms." *See Mass Transit,* 708 A.2d at 303 (quoting *Heat & Power,* 578 A.2d at 1206–07).

Empire nevertheless contends *Mass Transit* is distinguishable and that the New York Federal District Court cases are in error because the agreement in the *Mass Transit* case "includ[ed] the requirement that MTA insure CSXT and a specific requirement that MTA add CSXT as an insured under MTA's insurance policy." *See id.* at 301. Empire contends the Agreement here did not require Empire to provide insurance for CMA. To support this contention, Empire refers to the addendum to the Agreement, a "Certificate of Liability Insurance" that includes an "Equipment Provider List." On this list, certain equipment providers have either a single or double asterisk next to their names. The addendum provides, "The companies above indicated with a single asterisk require that you make them additional insured on your General Liability Policy. The companies above indicated with a double asterisk require that you make them additional insured on your Car-

go and/or Trailer Interchange coverages." Empire asserts that because CGA does not have an asterisk by its name, it did not have to be named an additional insured and that *Mass Transit* therefore does not apply. As noted above, the Agreement provides that the addendum is part of the Agreement, "but only to the extent that its terms do not conflict with this Agreement." The plain language of the Agreement requires Empire to provide "insurance coverages in fulfillment of its legal liability and obligations contained in this Agreement." Under the *Mass Transit* analysis, this indicates a clear and unequivocal intention to indemnify CMA for its own acts or omissions. To the extent that the addendum conflicts with that clear and unequivocal intent, the Agreement provides that it is not binding upon the parties.

We hold that the Agreement is enforceable under Maryland law and that the trial court erred by dismissing the suit on the grounds that the Agreement was not enforceable.

We sustain CMA's first issue.

### Spoliation

In its third issue, CMA challenges the trial court's order imposing a spoliation instruction as a discovery sanction. CMA contends that the trial court erred by deciding that at the time of the trial of Aguirre's claims, it would prohibit CMA from entering certain evidence and instruct the jury that the missing evidence should be presumed to be harmful to CMA's case. However, Aguirre and CMA settled the case without a jury trial, and they asked the trial court to accept the settlement. To the extent that CMA is challenging the spoliation order granted in favor of Aguirre, CMA has waived any complaint because the case settled without

a jury trial. *See Baker v. Fed. Exp. Corp.*, 224 S.W.3d 390, 394 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (finding party waived complaint concerning spoliation instruction where trial court did not instruct jury and parties asked court to accept settlement agreement); *see also Psych. Insts. of Am., Inc. v. O'Neill*, 819 S.W.2d 805, 806 (Tex.1991) (orig. proceeding) (holding mandamus concerning discovery dispute was rendered moot by settlement of underlying case).

In this appeal, CMA also asserts that the spoliation ruling affects whether we should apply Texas law or Maryland law. That argument was raised in Empire's motion for summary judgment. However, the trial court expressly stated, and the parties agreed, that the trial court was only construing the Agreement as a matter of law and the court was not ruling on any of the issues raised in the motions for summary judgment. Because the trial court never ruled on the matter of whether the spoliation of evidence would affect which law should be applied, nothing is preserved for our review. *See* TEX.R.APP. P. 33.1(a)(2)(A); *De Miño v. Sheridan*, 176 S.W.3d 359, 373 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (holding party must obtain ruling on motion to preserve error). Finding nothing preserved for our review, we overrule CMA's third issue.

### Conclusion

We reverse the trial court's order dismissing CMA–CGM (America) Inc.'s cross-claim and remand this cause to the trial court for further proceedings consistent with this opinion.

### SUPPLEMENTAL OPINION ON MOTION FOR REHEARING

This Court issued a supplemental opinion in this case on February 26, 2009. We withdraw that opinion and issue this one in its place.

▮ Appellee, Empire Truck Lines Inc., filed a motion for rehearing asserting for the first time that section 623.0155 of the Texas Transportation Code renders the indemnification provision of the Uniform Intermodal Interchange and Facilities Access Agreement unenforceable. *See* TEX. TRANSP. CODE ANN. § 623.0155 (Vernon 1999). In its motion for rehearing, Empire acknowledges that section 623.0155 "was not raised by either parties's brief to this Court, or in the summary judgment papers below." As a general rule, we do not address new arguments presented in a rehearing. *See Tex. Mut. Ins. Co. v. Ruttiger*, 265 S.W.3d 651, 658 n. 8 (Tex. App.-Houston [1st Dist.] 2008, pet. filed).

In our opinion and judgment issued December 4, 2008, we reversed the trial court's order and remanded the cause for further proceedings consistent with this opinion. We determined that, under the terms of the Agreement, the Agreement provided that Maryland law shall govern the validity, construction, enforcement, and interpretation of the Agreement. We also held that the Agreement is enforceable under Maryland law. Other than the instruction that the trial court must conduct proceedings that are consistent with our opinion, we have not limited the issues that may be presented upon remand to the trial court. The implications, if any, of section 623.0155 have never been addressed by us or the trial court, and, upon proper presentation, may be addressed by the trial court upon remand. We therefore do not address the new argument concerning section 623.0155. *See Port Neches–Groves Indep. Sch. Dist. v. Pyramid Constructors, L.L.P.*, 201 S.W.3d 679, 681 (Tex.2006) (declining to review issue that was not presented to trial court because parties can

develop record as they deem necessary upon remand to trial court).

We deny Empire Truck Lines Inc.'s motion for rehearing.