ACCEPTED
01-14-00278-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
12/21/2015 12:54:32 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-14-00278-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
12/21/2015 12:54:32 PM
CHRISTOPHER A. PRINE
Clerk

## IN THE FIRST COURT OF APPEALS OF TEXAS

# JOHN DAVIS d/b/a J.D. HOUSE OF STYLE

## v.

# NATIONAL LLOYDS INSURANCE COMPANY

On Appeal from the 281st Judicial District Court
Harris County, Texas, Cause No. 2010-58199

# RESPONSE TO
# MOTION FOR REHEARING

Scott A. Brister - SBN 00000024
ANDREWS KURTH LLP
111 Congress Ave., Suite 1700
Austin, Texas 78701
phone: (512) 320-9200
Fax: (512) 320-9292
*sbrister@andrewskurth.com*

Scot G. Doyen – SBN 00792982
Alasdair Roberts – SBN 24068541
DOYEN SEBESTA, LTD., L.L.P.
450 Gears Road, Suite 350
Houston, Texas 77067
Phone: (713) 580-8900
Fax: (713) 580-8910

**ATTORNEYS FOR APPELLEE**
**NATIONAL LLOYDS INSURANCE COMPANY**

AUS:696416.1

# TABLE OF CONTENTS

Argument ..................................................................1

I.  "(X)" was unambiguously an instruction .......................1

II.  The damages for repairs related to a different policy ....4

III.  No breach means no extra-contractual claims...............6

Conclusion ..............................................................12

AUS:696416.1

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*In re Allstate Cnty. Mut. Ins. Co.,*
447 S.W.3d 497 (Tex. App.—Houston [1st Dist.] 2014,
orig. proceeding) ....................................................................9, 10

*Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.,*
297 S.W.3d 248 (Tex. 2009) ..................................................9

*CMA-CGM (Am.) Inc. v. Empire Truck Lines Inc.,*
285 S.W.3d 9 (Tex. App.—Houston [1st Dist.] 2008, no
pet.) ..........................................................................................6

*Elledge v. Friberg-Cooper Water Supply Corp.,*
240 S.W.3d 869 (Tex. 2007) ..................................................8

*Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.,*
161 S.W.3d 482 (Tex. 2005) ..................................................3

*Isaacs v. Plains Transp. Co.,*
367 S.W.2d 152 (Tex. 1963) ..................................................4

*JAW The Pointe, L.L.C., v. Lexington Ins. Co.,*
460 S.W.3d 597 (Tex. 2015) ..................................................9

*In re K.M.S.,*
91 S.W.3d 331 (Tex. 2002) ....................................................8

*Kachina Pipeline Co., Inc. v. Lillis,*
471 S.W.3d 445 (Tex. 2015) ..................................................3

*Liberty Nat'l Fire Ins. Co. v. Akin,*
927 S.W.2d 627 (Tex. 1996) ..................................................9

iii

*Provident Am. Ins. Co. v. Castañeda*,
　988 S.W.2d 189 (Tex. 1998)......................................................................12

*Republic Ins. Co. v. Stoker*,
　903 S.W.2d 338 (Tex. 1995)...................................................................8, 10

*State Farm Lloyds v. Page*,
　315 S.W.3d 525 (Tex. 2010).......................................................................8

*Transp. Ins. Co. v. Moriel*,
　879 S.W.2d 10 (Tex. 1994).........................................................................9

## Other Authorities

BLACK'S LAW DICTIONARY 1700 (10th ed. 2014)............................................3

AUS:696416.1

# ARGUMENT

There is no good reason to reconsider whether a pre-printed "(X)" as an instruction on an insurance policy made the policy ambiguous. There is no good reason to reconsider a jury finding on repairs based on the assumption this was a Replacement Cost Value (RCV) policy when the Court has affirmed it was an Actual Cash Value (ACV) policy. And there is no good reason to encourage an insured to seek extra-contractual damages after the contract claim he pursued for five years is dismissed as groundless. National Lloyds respectfully urges the Court to deny Davis's motion for rehearing.

## I.      "(X)" was unambiguously an instruction

Davis's first complaint is that this Court "is just preferring one page over another" in an ambiguous policy. The parties' briefs have already covered this issue thoroughly.

"(X)" and several other pre-printed instructions appear repeatedly on the declarations page of Davis' policy (*6ARR8*). In the Optional Coverages section, the instruction "(Percentage)" appears

AUS:696416.1

next to Inflation Guard, the instruction "(Fraction)" next to Monthly Limit of Indemnity, the instruction "(Days)" next to Extended Period of Indemnity, and the instruction "(X)" next to both Replacement Cost and Maximum Period of Indemnity:



Davis is correct that each of these "has to mean something":

- "(Percentage)" means the Inflation Guard provision **must** state a percentage;

- "(Fraction)" means the Monthly Limit of Indemnity **must** state a fraction;

- "(Days)" means the Extended Period of Indemnity **must** state the number of days extended; and

- "(X)" means an X **must** be placed under Replacement Cost and Maximum Period of Indemnity if those items apply.

The instructions for the first three of these items allowed a range of options, but Replacement Cost and the Maximum Period of Indemnity were binary options: an insured either bought and paid for them or did not. Mr. Davis did not.

2

AUS:696416.1

Davis says the Court should have considered evidence of industry practice in interpreting this policy. But "(X)" is not a term of art,[1] and there is no evidence it has a special meaning by custom and usage in the insurance industry. Since it is clearly used here as an instruction, extrinsic evidence of industry custom cannot change that.[2]

Nor does Kevin Mohr's testimony require the Court to find this policy ambiguous. Witnesses do not decide whether there are two reasonable interpretations of a contract; courts do.[3] If the rule were otherwise, parties could create ambiguity merely by hiring an expert to say so. Mr. Mohr was designated by National Lloyds to appraise property damage and coverage on Davis's property (*CR33*), but his

---

[1]    *See* BLACK'S LAW DICTIONARY 1700 (10th ed. 2014) ("A word or phrase having a specific, precise meaning in a given specialty, apart from its general meaning in ordinary contexts.").

[2]    *See Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 454 (Tex. 2015) ("[I]ndustry custom cannot impose obligations beyond those within the written Agreement.").

[3]    *See Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 490-91 (Tex. 2005) (holding that a contract provision "is not ambiguous, and thus did not need to be submitted to the jury.").

AUS:696416.1

opinions about whether it was ambiguous and how it should be construed are not binding on this Court.[4]

## II. The damages for repairs related to a different policy

Next, Davis argues that even if National Lloyds owed nothing on his policy, it must pay him $17,200 for repairs because "repair damages are separate and apart from diminished property value." Neither the evidence nor the policy supports this claim.

The jurors were not told whether the policy was ACV or RCV, and their answer for repairs was not specific to either. But the evidence clearly was; as this Court stated in its opinion: "Davis presented no evidence of the depreciated value of his roof, nor did he provide any evidence segregating the cost of repairs[.]" *See Opinion at 25*. National Lloyds presented the only evidence of repairs needed to restore the roof to its *depreciated* condition, and that evidence showed it was less than the policy's deductible (*2RR94-96*; *6ARR166*). Thus, the

---

[4]    *See Isaacs v. Plains Transp. Co.*, 367 S.W.2d 152, 153 (Tex. 1963) (holding truck driver's statements that he was at fault "were pure conclusions and opinions, were not offered for impeachment, and were not admissible against the employer[.]").

4

jury's answer could not have reflected the cost of restoring the roof to its depreciated roof (per ACV coverage), but only of restoring a brand-new roof (per RCV coverage). This Court having concluded this was an ACV policy, the jury's answer regarding and RCV policy had to be disregarded.

National Lloyds had no duty to pay for damages *or* repairs beyond its policy. In the policy, National Lloyds promised to pay "at our option" either (1) the value of damaged property or (2) the cost of repairing it.[5] The policy also provided that: "If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss."[6] Since National Lloyds could select whether to pay for damages or repairs "at our option," and the damages were below the deductible, National Lloyds could select that option and pay nothing. So even if had Davis presented evidence of repair expenses incurred to

---

[5]    *See 6CRR138*, ¶¶ 1(a)(1)-(2)("In the event of loss or damage covered by this Coverage Form, at our option, we will either: (1) Pay either the value of lost or damaged property; [or] (2) Pay the cost of repairing or replacing the lost or damaged property, subject to b. below[.]")).

[6]    *See 6CRR137*, ¶ D; *6CRR173* ¶ A(2).

5

return the roof to its *depreciated* condition (which he did not), he could not avoid the policy's deductible by making repairs himself.[7]

## III.   No breach means no extra-contractual claims

Davis's final argument is that the Court should reverse and award him policy benefits based on his extra-contractual claims even if National Lloyds properly denied his claim. This argument is raised for the first time on rehearing. "As a general rule, we do not address new arguments presented in a rehearing." *CMA-CGM (Am.) Inc. v. Empire Truck Lines Inc.*, 285 S.W.3d 9, 18 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Davis had the chance to make this argument earlier, because National Lloyds argued that disposing of Davis's policy claims "also disposes of Davis's extra-contractual claims."[8] Davis did not respond to that argument,[9] so it comes too late now.

---

[7]     *See also 6CRR144* (providing that Covered Property will be valued in the event of loss at "actual cash value").

[8]     *See* Appellee's Br. at 22 (citing *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010)).

[9]     *See* Reply Br. of Appellant at 9-11.

AUS:696416.1

In any event, this argument is based entirely on a single case from the Thirteenth Court of Appeals — one that is likely to be reversed soon. In *USAA Texas Lloyd's Co. v. Menchaca*, the Corpus Christi court held in a memorandum opinion that extra-contractual claims were extinguished by a finding of no *coverage*, but not by a finding of no *breach* due to a deductible.[10] USAA has petitioned for review (represented by former Chief Justice Wallace Jefferson), and the Texas Supreme Court ordered full briefing on May 1, 2015.[11]

*Menchaca* is neither binding nor persuasive for several reasons. First, Davis's policy treats the deductible as *part* of coverage, not independent of it. The first sentence of the Commercial Property form here stated: "Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties **and what is and is not covered**." (*6CRR131* (emphasis added)). Thus, a reader looking at what the policy covers must look at *both* of the following clauses:

---

[10]     *See* No. 13-13-00046-CV, 2014 WL 3804602 (Tex. App.—Corpus Christi July 31, 2014, pet. filed).

[11]     *See* http://www.search.txcourts.gov/Case.aspx?cn=14-0721&coa=cossup.

7

AUS:696416.1

- "**A. Coverage**. We will pay for direct physical loss of or damage to Covered Property at the premises described[.]" (*6CR131*); and

- "**D. Deductible** … If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss." (*6CR137*).

To determine "what is and is not covered," one cannot disregard the clause that provides "we will not pay" claims below the deductible. Thus, this *was* a coverage dispute according to this policy, so the Corpus Christi court's distinction does not apply.

Second, the *Menchaca* court picked a few Supreme Court opinions and ignored others, which courts of appeals cannot do.[12] Some Supreme Court opinions say that "[w]hen the issue of *coverage* is resolved in the insurer's favor, extra-contractual claims do not survive."[13] But plenty of others say that when the insurer did not *breach the contract*, extra-contractual claims do not survive:

---

[12] *See, e.g., Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007); *In re K.M.S.*, 91 S.W.3d 331, 331 (Tex. 2002).

[13] *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) (emphasis added); *see also Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) ("As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered.").

8

- "[I]n most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer ***breached the contract***." *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) (emphasis added)).

- "Having concluded that Chrysler ***did not breach*** the insurance contract, no basis supports these [extra-contractual] awards." *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 254 (Tex. 2009)

- "An insurer generally cannot be liable for failing to settle or investigate a claim that it has ***no contractual duty to pay***." *In re Allstate Cnty. Mut. Ins. Co.*, 447 S.W.3d 497, 501 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) (emphasis added).

- "The threshold of bad faith is reached when a ***breach of contract*** is accompanied by an independent tort." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994).

- "[T]he policy[] … excluded coverage for JAW's losses, and JAW therefore cannot recover against Lexington on its statutory bad faith claims." *JAW The Pointe, L.L.C., v. Lexington Ins. Co.*, 460 S.W.3d 597, 610 (Tex. 2015).

An insurer does not breach a policy if there is *either* no coverage *or* no liability above the deductible, and courts sometimes use these terms

9

interchangeably.[14] The Thirteenth Court had a duty to follow all of these cases, not create a dubious distinction that ignores half of them.

It is hard to argue with Davis's analogy that "[a] kitten is still a cat, even though it is a smaller feline creature." But it is irrelevant. If an insurer says it will pay for cats but not kittens, there is no extra-contractual duty to pay for a kitten.

It is theoretically possible that extra-contractual liability can survive a finding that an insurer did not breach the policy, but only "if its conduct was **extreme** and produced damages unrelated to and **independent of the policy claim**."[15] Davis alleges no extreme conduct producing independent damages here; all three of his extra-contractual claims alleged only that National Lloyds breached his policy (*4RR26-28*), and without that breach they collapse.

---

[14] *See, e.g., Republic Ins. Co.*, 903 S.W.2d at 341 (stating "there can be no claim for bad faith when … [it] is in fact not covered," but citing as support cases that bar fad-faith claims when there is no breach of contract).

[15] *See In re Allstate Cnty. Mut. Ins. Co.*, 447 S.W.3d 497, 502 n.2 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) (quoting *Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (emphasis added)).

10

First, Davis claimed National Lloyds misrepresented a material fact or policy provision by denying his claim from Hurricane Ike (*CR213, 4RR26*). Denial was based on failure to meet the deductible,[16] which Davis said he understood.[17] Since this Court has held that denial correct, it cannot be an extra-contractual "misrepresentation."

Davis's second extra-contractual claim was that National Lloyds failed to attempt in good faith to settle his claim after liability became reasonably clear (*CR213, CR215*). Since there was *no* liability, National Lloyds had no extra-contractual duty to settle it sooner.

Davis's third extra-contractual claim was that National Lloyds refused to conduct a reasonable investigation (*CR213, CR215*). But after numerous investigations by all parties, the jurors still found $0 due on this ACV policy (*CR216*). Since restoring Davis's roof to its depreciated pre-Ike condition did not exceed the deductible no matter

---

[16]     *See 6CR227* ("We have investigated your claim and must respectfully deny Payment for the following reason(s): Total damage appears to be less than deductible.").

[17]     A. [*Davis*] About a week or two later, I got a letter from them saying that they couldn't pay me but $3700 -- I mean, my deductible was $3700. So I had to come up with that and so I didn't worry with them no more. (*2RR39*).

AUS:696416.1

how many reasonable investigations were made, there was neither evidence nor a jury finding that he suffered any damage from any unreasonable investigation.[18]

## CONCLUSION

For the foregoing reasons, Appellee National Lloyds Insurance Company prays this Court deny Appellant's Motion for Rehearing.

Respectfully submitted,

ANDREWS KURTH LLP

By: __/s/ Scott A. Brister__

Scot G. Doyen - SBN 00792982
Alasdair Roberts – SBN 24068541
DOYEN SEBESTA, LTD., L.L.P.
450 Gears Road, Suite 350
Houston, Texas 77067
Phone: (713) 580-8900
Fax: (713) 580-8910
*sdoyen@ds-lawyers.com*
*aroberts@ds-lawyers.com*

Scott A. Brister - SBN 00000024
ANDREWS KURTH LLP
111 Congress Ave., Suite 1700
Austin, Texas 78701
Phone: (512) 320-9200
Fax: (512) 320-9292
*sbrister@andrewskurth.com*

**COUNSEL FOR NATIONAL LLOYDS INSURANCE COMPANY**

---

[18]     *See Provident Am. Ins. Co. v. Castañeda*, 988 S.W.2d 189, 198 (Tex. 1998) ("[F]ailure to properly investigate a claim is not a basis for obtaining policy benefits.").

12

# CERTIFICATE OF COMPLIANCE

I certify that this Petition for Review contains 2,204 words as calculated per Rule 9.4(i)(1) of the Texas Rules of Appellate Procedure.

/s/ Scott A. Brister
Scott A. Brister

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via electronic transmission on December 21, 2015 on the following counsel:

Richard P. Hogan, Jr. - *rhogan@hoganfirm.com*
Jennifer Bruch Hogan - *jhogan@hoganfirm.com*
James C. Marrow - *jmarrow@hoganfirm.com*
HOGAN & HOGAN
711 Louisiana, Suite 500
Houston, Texas 77002

Humberto G. Garcia - *humberto@speightsfirm.com*
Jason B. Speights - *jason@speightsfirm.com*
SPEIGHTS & WORRICH
1350 N. Loop 1604 East, Suite 104
San Antonio, Texas 78232

/s/ Scott A. Brister
Scott A. Brister

13